522 A.2d 1095

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael Robert WILLIAMS, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1986.

Decided March 19, 1987.

126

Stuart Suss, Director of Appeals, West Chester, for appellant.

Albert P. Massey, Jr., Paoli, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is an appeal by allowance [1] by the Commonwealth of Pennsylvania (Appellant) from the May 10, 1985, Order of

1. See, Judicial Code of 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended by the Judiciary and Judicial Procedure Act of 1980, Oct. 5, P.L. 693, No. 142, § 402(a), 42 Pa.C.S. § 724.

the Superior Court vacating Appellee's three sentences for criminal attempt (murder of the first degree), and one sentence for arson endangering persons, and remanding the case to the trial court for resentencing on the arson conviction.

Appellee, Michael Robert Williams, was convicted of arson endangering persons,[2] arson endangering property,[3] burglary,[4] theft by unlawful taking,[5] theft by receiving stolen property,[6] criminal conspiracy,[7] and three counts of criminal attempt (murder of the first degree).[8] The convictions resulted from the April 2, 1978, burglary and subsequent burning of the residence of James Latta. On August 14, 1979, the trial court sentenced Appellee to ten (10) to twenty (20) years on the arson endangering persons count; five (5) to ten (10) years on each of the three attempt counts; and five (5) to ten (10) years on the burglary conviction. All sentences were to run consecutively for an aggregate term of thirty (30) to sixty (60) years.

The evidence at trial established that during the burglary, Appellee told one of his accomplices that he knew the residents were at home, and that if they came downstairs he would kill them. Further, after the burglary, Appellee stated that he intended to set the house on fire to make the Lattas "pay" for the misfortunes of his brother (unrelated to any conduct of the Lattas). While the evidence at trial was sufficient to support all of the convictions, the trial judge suspended sentence upon the convictions for theft by unlawful taking and criminal conspiracy, and did not impose sentence for theft by receiving stolen property on merger grounds. *Commonwealth v. Williams*, 30 Chester 166, 167

2. 18 Pa.C.S. § 3301(a).
3. 18 Pa.C.S. § 3301(b).
4. 18 Pa.C.S. § 3502.
5. 18 Pa.C.S. § 3921.
6. 18 Pa.C.S. § 3925.
7. 18 Pa.C.S. § 903.
8. 18 Pa.C.S. § 901.

(see n. 3) (1981). Sentence on the arson endangering property conviction was also suspended. *Id.* at 167, n. 2.[9]

On direct appeal, the Superior Court remanded the case to the trial court for appointment of new counsel and for a hearing on the issue of ineffectiveness of trial counsel. The trial court, finding that trial counsel had been ineffective for failure to present argument prior to imposition of sentence, vacated the sentences. On January 21, 1983, Judge Sugerman resentenced Appellee to sentences identical to those originally imposed. A second direct appeal was taken in which Appellee contended, inter alia, that his conviction for arson endangering persons merged for sentencing purposes with his three convictions for criminal attempt (murder of the first degree), therefore, the multiple sentences imposed were illegal.

Superior Court held that the trial court erred in imposing separate sentences for the crime of arson endangering persons and for each of the criminal attempt crimes reasoning that "[a]fter the Commonwealth had completed its proof of the crime of attempted murder, it also completed its proof for the crime of arson endangering persons." Accordingly, Superior Court vacated the three sentences for criminal attempt and arson endangering persons, and remanded for resentencing on the arson conviction. *Commonwealth v. Williams,* 343 Pa.Superior Ct. 280, 494 A.2d 467 (1985). We granted the Commonwealth's Petition for Allowance of Appeal, and we now reverse.

On this appeal, the Commonwealth presents the following issues for our consideration: 1) whether a defendant who sets fire to a house intending to kill each of the three occupants may lawfully be given separate sentences for each of the three attempted first degree murders; 2) whether a defendant convicted of both criminal attempt (murder of the first degree) and arson is entitled, by virtue of the merger doctrine, to vacation of the sentences imposed for

9. Superior Court incorrectly stated that the trial court found that the two arson counts merged. *Commonwealth v. Williams,* 343 Pa.Superior Ct. 280, 282, n. 1, 494 A.2d at 467, n. 1, and 343 Pa.Superior Ct. 286, n. 6, 494 A.2d 470, n. 6 (1985).

the three criminal attempts; 3) whether a trial court may resentence a defendant on certain counts of an information following an appellate reversal of other counts on grounds of merger; and 4) whether the merger doctrine should be abolished in Pennsylvania since there is neither justification nor need for the doctrine's continued existence.

Appellant first argues that the Superior Court's ruling that separate sentences could not be imposed for the attempted murder of each victim is in conflict with our decision in *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984). Appellee counters that the instant case is distinguishable from *Frisbie* because the issue here is whether a single act—regardless of whether multiple victims exist—can be the basis for multiple sentences for each of several crimes that resulted from the single act. In other words, where a defendant commits a single act of setting fire to a building known to be occupied, can that act be the basis for multiple sentences for arson endangering persons and for criminal attempt.

In *Frisbie*, we held that a single unlawful act which affects multiple victims may support multiple sentences without violating the double jeopardy clause of the Fifth Amendment of the United States Constitution. Therein, we expressly overruled our decision in *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976), and dispelled the notions that "where there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth ..." and that "it is beyond the power of a court imposing sentence to impose multiple sentences on a defendant for a single act." *Frisbie, supra*, 506 Pa. at 465, 485 A.2d at 1099; citing the specific language of *Commonwealth v. Walker, supra*. We determined that in resolving this issue "our task is to simply determine whether the Legislature intended that each injury constitute a separate offense." *Frisbie*, 506 Pa. at 465–66, 485 A.2d at 1100. We held that with regard to recklessly endangering another person (18 Pa.C.S. § 2705), the Legislature intended a separate offense for each person who was a victim of the

criminal conduct. *Id.* Therefore, it was permissible to impose nine separate sentences for recklessly endangering another person as a result of the single action of propelling an automobile through a crowded intersection and injuring nine pedestrians.

■ The same legislative intent would apply in the case of criminal attempt (criminal homicide). "Criminal attempt" (18 Pa.C.S. § 901(a) is defined:

> A person commits an attempt when with intent to commit a specific crime he does any act which constitutes a substantial step toward the commission of that crime.

"Criminal homicide" (18 Pa.C.S. § 2501(a) is defined:

> A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of *another human being.* (Emphasis added.)

The singular was used by the Legislature in defining "criminal homicide" as when it defined "recklessly endangering another person." Thus, it is clear that the legislative intent was to make the unit of prosecution the attempted death of each person, not the single act of the perpetrator. As Appellant points out, the Superior Court's holding would produce the incongruous result that one who attempts to murder three persons by driving his car at them may be given three sentences, but a defendant who attempts to murder three persons by burning them in their home while they sleep may be given only one sentence.

We also noted in *Frisbie,* that among the general purposes of the Crimes Code, 18 Pa.C.S.A. § 104:

> are that of insuring that punishment is proportionate with criminal liability, 18 Pa.C.S.A. § 104(3), and that of differentiating among offenders based on the seriousness of their offenses, 18 Pa.C.S.A. § 104(5). An offender whose unlawful act harms or is likely to harm many people is more culpable, and thus deserving of more severe punishment, than an offender whose unlawful act harms only one person. By holding that multiple sentences may be

imposed for a single unlawful act, both purposes are served.

*Id.*, 506 Pa. at 467, 485 A.2d at 1101.

Therefore, under the authority of *Frisbie*, imposition of multiple sentences upon a defendant who sets fire to a house with the intent to kill each of three occupants is clearly permissible. That determination does not resolve the question of whether the imposition of a sentence for arson endangering persons precluded the imposition of sentences for any of the three attempted murders by virtue of the merger doctrine, or on double jeopardy grounds. Appellee argues that his sentences for arson endangering persons and criminal attempt—homicide not only violate the merger doctrine, but also clearly violate his double jeopardy rights since the arson was the means employed to perpetrate the crime of attempted murder. The recent decisions of this Court and of the United States Supreme Court have recognized that the sole issue presented in multiple punishment cases is one of statutory construction, whereby the courts can determine whether, in absence of legislative expression to the contrary, the Legislature intended to prescribe multiple punishments under two separate statutory provisions for what might arguably be considered the "same offense." *Commonwealth v. Bostic*, 500 Pa. 345, 456 A.2d 1320 (1983); *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

> The double jeopardy clause serves principally as a restraint on courts and prosecutors—it does *not* restrain the legislature in its role in defining crimes and fixing penalties. *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981), citing *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The intent of the double jeopardy provisions is to prevent courts from imposing, and prosecutors from seeking, more than one punishment under a particular legislative enactment, and, where consecutive sentences are imposed at a single trial, to prevent the court from exceeding its legislative autho-

rization by imposing multiple punishments for the same offense.

*Bostic,* 500 Pa. at 350, 456 A.2d at 1322.

Double jeopardy claims have traditionally been analyzed under the "same offense" test enunciated by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and followed by this Court in *Commonwealth v. Houtz,* 496 Pa. 345, 437 A.2d 385 (1981); and *Commonwealth v. Tarver, supra.* That test states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

■ This test requires that we examine the elements of the crimes charged, in this instance, arson endangering persons and criminal attempt (first degree murder). "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied [and double jeopardy is not violated] notwithstanding a substantial overlap in the proof offered to establish the crimes...." *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187, 194 (1977).

■ In the instant case, conviction for arson endangering persons, under the then operative statute, required proof that the defendant had intentionaly started a fire and thereby recklessly placed another person in danger of death or bodily injury, 18 Pa.C.S. § 3301 (1973).[10] A conviction for

---

10. At the time of trial, the applicable statute relating to arson provided:

    (a) *Endangering persons.*—A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, whether on his own property or on that of another, and thereby recklessly places another person in danger of death or bodily injury.

    (b) *Endangering property.*—A person commits a felony of the second degree if he:

criminal attempt (criminal homicide) requires proof that with the intent to commit a specific crime, a person does any act which constitutes a substantial step toward the commission of the crime, 18 Pa.C.S. § 901. A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being. 18 Pa.C.S. § 2501(a). (In this case, it was found that Appellee had the specific intent to kill.) The intent to start a fire, a necessary element of arson endangering persons is not an element of attempted first degree murder. The intent to kill, a necessary element of attempted first degree murder, is not an element of arson endangering persons. Under the above-cited test, there is no violation of double jeopardy in sentencing on both criminal offenses that were committed as the result of one act. However, this mechanical application reveals nothing as to legislative intent—which is clearly the test to be applied in multiple punishment cases. Even when two crimes arise from the same offense under the *Blockburger* rule, separate punishments are permitted if there is a clear legislative intent that separate punishments may be imposed. *Missouri v. Hunter, supra; Commonwealth v. Bostic, supra.*

The United States Supreme Court went even further in *United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (per curiam opinion), holding that in the absence of evidence of Congressional intent to *disallow*

1) starts a fire or causes an explosion with intent of destroying a building or occupied structure of another;

2) intentionally starts a fire or causes an explosion, whether on his own property or on that of another, and thereby recklessly places a building or occupied structure of another in danger of damage or destruction; or

3) starts a fire or causes an explosion with intent of destroying or damaging any property, whether his own or of another, to collect insurance for such loss.

(c) *Definitions.*—As used in this section the term "occupied structure" means any structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present. Property is that of another, for the purposes of this section, if anyone other than the actor has a possessory or proprietary interest therein. If a building or structure is divided into separately occupied units, any unit not occupied by the actor is an occupied structure of another.

separate punishment for two criminal offenses (which argu-
ably could be considered the "same offense" under the
*Blockburger* test), consecutive sentences were permissible
where defendant's convictions for making a false statement,
18 U.S.C. § 1001, and a currency reporting violation, 31
U.S.C. § 1058, were based on the single act of checking the
"no" box on a U.S. Customs form. The Court reasoned that
Congressional intent to allow punishment under both stat-
utes was shown by the fact that the statutes "are directed
to separate evils." *Woodward*, at 109, 105 S.Ct. at 613.

■ Since Appellee's double jeopardy claim is without
merit, we proceed to determine whether a different result
obtains from an analysis under the common law merger
doctrine. The need to apply the merger doctrine usually
arises only in situations where the Legislature has outlawed
the same conduct under more than one statute. Crimes
may merge even if the double jeopardy clause does not
require it. The traditional test for determining whether one
offense merges into another for purposes of sentencing is
whether one crime necessarily involves the other. *Com-
monwealth v. Mosczcynski*, 343 Pa. 102, 21 A.2d 920 (1941).
In order that one crime necessarily involve the other, the
essential elements of one must also be the essential ele-
ments of the other. That is, if no additional facts are
needed to prove the additional offense, it merges into the
primary offense for sentencing purposes. *Mosczcynski,
supra.* However, this comparison of the elements is not
the only test that has been utilized by the courts of this
Commonwealth to determine the merger issue.

A second test focuses on whether the facts reveal that
the offenses charged caused more than one injury to the
Commonwealth. *Commonwealth v. Walker, supra. See
also, Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886
(1976) (explaining separate harms done by conspiracy to
commit offense and the completed offense). A review of
the more recent cases decided by the Superior Court reveals
that a two-pronged test has evolved.

The merger doctrine does not ask us to adhere rigidly to a "same offense" test in searching for legislative intent. Nor, on the other hand, is it concerned exclusively with the physical facts that must be proven to make out various crimes. Instead, it obliges us to take a broader view of the purposes of criminal legislation and the diverse evils which particular enactments were meant to protect against....

In order to find that separate statutory offenses merge, we must therefore determine not only that the crimes arose out of the same criminal act, transaction, or episode, but also that the statutes defining the crimes charged were directed to substantially the same harm or evil. If we do not take both of these steps, we fail in our duty to effectuate the legislative mandate in carrying out statutory punishments.

*Commonwealth v. Leon Williams*, 344 Pa.Superior Ct. 108, 126–28, 496 A.2d 31, 41–42 (1985). *Accord, Commonwealth v. Sparks*, 351 Pa.Superior Ct. 320, 505 A.2d 1002 (1986); *Commonwealth v. John Williams*, 353 Pa.Superior Ct. 207, 509 A.2d 409 (1986); *Commonwealth v. Campbell*, 351 Pa.Superior Ct. 56, 505 A.2d 262 (1986); *Commonwealth v. Adams*, 350 Pa.Superior Ct. 506, 504 A.2d 1264 (1986).[11]

Under this test, merger is required only when two prerequisites are met. First, the crimes must "necessarily involve" one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest. To determine whether multiple offenses involve substantially different interests, or how many evils are present in a given criminal act, the sentencing court must examine both the language of the particular statutes and the context in which each statute appears in the Crimes Code. *Williams, supra,* 344 Pa.Superior Ct. at 143, 496 A.2d at 50.

11. In *Leon Williams,* Petition for Allowance of Appeal was denied on October 6, 1980, at 298 E.D.Misc. 80. In *John Williams,* Petition for Allowance of Appeal was denied on October 7, 1986, at 465 E.D. 86.

■ In the case before us, the Appellee, on the basis of a single act, was sentenced on two crimes, arson endangering persons and attempted murder of the first degree. Arson, as pertinent here, is defined by § 3301(a) (1973), as the intentional starting of a fire ... thereby recklessly placing another person in danger of death or bodily injury. Criminal attempt (murder of the first degree) is defined in §§ 901 and 2502 of the Crimes Code. Under § 901(a), a person commits an attempt when with intent to commit a specific crime he does any act which constitutes a substantial step toward the commission of that crime. Under § 2502(a), a criminal homicide constitutes murder of the first degree when committed by an intentional killing. Here, the Appellee intended to, and did, accomplish the crime of arson, and he also intended, and attempted but failed, to accomplish three killings in the perpetration of arson. Obviously, the crime of attempted murder is of a class separate from the crime of arson and each class involves proof of one or more factual elements not common to the other. In order to prove attempted first degree murder, the Commonwealth had to prove a specific intent to kill. Mere evidence of the intentional setting of a fire does not prove intent to kill. Appellee's intent to kill was proven by evidence of his state of mind just prior to setting the fire. Thus, the crimes involve separate essential elements for which additional evidence was necessary. Intent to endanger persons is not a necessary element of arson endangering persons; the intentional setting of a fire must merely result in recklessly placing another in danger of death or bodily injury. Thus, the state of mind evidence that Appellee intended to kill the occupants was not necessary to prove the arson, but was necessary to prove the attempted first degree murder. There is no reason in law or logic to conclude that a criminal who deliberately chose to commit both arson and murder by the same incendiary course of conduct necessarily and as a matter of law committed but one crime which can only be subjected to one punishment.

Moreover, we conclude that Appellee's conduct has clearly injured separate interests of the Commonwealth. Arson

is an offense against the possession of property. The fact that the statute distinguished between arson endangering persons, § 3301(a), and arson endangering property, § 3301(b), does not remove its character as a property offense. The Legislature chose to place the emphasis on the degree of danger to life and property rather than on the type of building that was burned. Under the Penal Code of 1939, § 905 (18 P.S. § 4905), the burning of a dwelling, barn or stable carried a maximum sentence of twenty (20) years, while the burning of any other building (e.g., a school) carried a maximum sentence of ten (10) years. The intent of the Legislature underlying the changes produced by the enactment of § 3301 (1973) was to update the law of arson and to abolish this illogical distinction. *See,* Comments of the Joint State Government Commission, Toll, Pennsylvania Crimes Codes Annotated at 385–388.

Murder, or attempted murder, on the other hand, is a crime against the person. The Commonwealth has separate and distinct interests in protecting its citizens from damage and/or destruction of their property, and in protecting against assaults on their person or attempts on their lives. In this case, Appellee was convicted of both arson endangering persons and arson endangering property. The trial judge, however, suspended sentence on the latter conviction. This was within his sentencing discretion, since one who intentionally starts a fire knowing the building to be occupied, which, in addition to damaging the building extensively, endangers three lives, is more culpable than one who merely destroys property with no intent to harm another person. We hold that where, as here, the injury to the Commonwealth's interests in protecting individuals from intentional killing is clearly separable from the property interests involved, the offenses do not merge. The trial court properly imposed sentence on both convictions. We reverse the Superior Court's vacation of the judgments of sentence on criminal attempt and arson endangering persons.

In light of this determination, we need not address the issue of whether a trial court may resentence a defendant on certain counts of an information following an appellate reversal of other counts on grounds of merger.

Further, we find Appellant's argument that the merger doctrine should be abolished unpersuasive. Such a change in our criminal law is a proper matter for the Legislature.

The Order of Superior Court vacating the judgments of sentence on arson endangering persons and criminal attempt (murder of the first degree) is reversed and the case is remanded to Superior Court for consideration of the issues not disposed of in its prior review.

NIX, C.J., files a concurring opinion.

LARSEN, J., files a concurring opinion.

ZAPPALA, J., concurs in the result.

NIX, Chief Justice, concurring.

Although it is evident that the United States Supreme Court does not place a high priority upon repetitious charging and convicting in their perception of the protection afforded under the federal double jeopardy concept, *see, e.g., Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); I do not believe that we should follow suit and discard a common-law merger doctrine that has served us well since antiquity. Under this doctrine a defendant may not be convicted and sentenced for a lesser necessarily included offense where he has also been convicted and sentenced for a greater offense which encompassed it. *Commonwealth v. Soudani*, 398 Pa. 546, 159 A.2d 687, *cert. denied*, 364 U.S. 886, 81 S.Ct. 177, 5 L.Ed.2d 107 (1960); *Commonwealth v. McCusker*, 363 Pa. 450, 70 A.2d 273 (1950); *Commonwealth ex rel. Shaddock v. Ashe*, 340 Pa. 286, 17 A.2d 190 (1941); *Commonwealth ex rel. Russo v. Ashe*, 293 Pa. 322, 142 A. 317 (1928); *Commonwealth v. Parker*, 146 Pa. 343, 23 A. 323 (1892) (per curiam); *Hunter v. Commonwealth*, 79 Pa. 503 (1875); *Dinkey v. Common-*

*wealth,* 17 Pa. 126 (1851); *Harman v. Commonwealth,* 12 Serg. & Rawle 69 (1825); *Respublica v. Roberts,* 2 Dall 224, 1 Yeates 6, 1 L.Ed. 316 (1791) (Shippen, J.). The key to the proper applicability of that doctrine is whether the lesser offense is a constituent element of the greater offense. The reasoning for such a view is obvious. Where the legislature has determined the range of sentence to be imposed for the conviction of the major offense, it is to be assumed that judgment encompassed the culpability of any lesser included offenses. While we concede the power of the legislature, under certain circumstances, to provide for duplicitous sentencing, such a result should not be inferred and must be expressly articulated. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986); *Commonwealth v. Sayko,* 511 Pa. 610, 515 A.2d 894 (1986); *Commonwealth v. Bostic, Jr.,* 500 Pa. 345, 456 A.2d 1320 (1983); *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982); *Commonwealth v. Nelson,* 452 Pa. 275, 305 A.2d 369 (1973); *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920 (1941).

I concur in the mandate of the majority because I agree with their conclusion that the merger doctrine is not here implicated.

LARSEN, Justice, concurring.

I agree with the majority in reasoning and result, except for its conclusion that "we find Appellant's argument that the merger doctrine should be abolished unpersuasive. Such a change in our criminal law is a proper matter for the Legislature." Majority slip op. at 17.

To the contrary, the merger doctrine was created by this Court, *Harman v. Commonwealth,* 12 Serg. & Rawle 69 (Pa.1824), and may be abolished by this Court. I agree with the Commonwealth that it is high-time that we did just that and that there is no justification or need for the continuing existence of this antiquated doctrine. It serves only to

confuse the bench and bar, as the instant case demonstrates.