554 A.2d 946

**COMMONWEALTH of Pennsylvania**

v.

**Gary L. SWAVELY, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1988.

Filed Feb. 23, 1989.

60

George A. Gonzalez, Assistant Public Defender, Reading, for appellant.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Com., appellee.

Before MONTEMURO, KELLY and POPOVICH, JJ.

KELLY, Judge:

We are called upon, in this appeal, to determine whether the imposition of separate consecutive sentences for delivery of two different prohibited narcotics in a single plastic vial and in a single sale violated the double jeopardy proscription against multiple punishments for a single offense, and whether the imposition of separate consecutive sentences violated Pennsylvania's merger doctrine. Upon careful review of the record and the applicable authority, we find neither the double jeopardy proscription nor the Pennsylvania merger doctrine were violated. Accordingly, we affirm the trial court's order denying appellant's petition for post-conviction relief.

Appellant, Gary L. Swavely, was arrested and charged in six separate counts with violating the Controlled Substance, Drug, Device and Cosmetic Act (the Act), 35 Pa.C.S.A. § 780–113(a)(16) and (a)(30). Following a jury trial, appellant was convicted of possession with intent to deliver and delivery of a Schedule II controlled substance (Tuinal) and possession with intent to deliver and delivery of a Schedule IV controlled substance (Talwin). Timely post-verdict motions were filed, argued and denied. On October 3, 1985, the appellant was sentenced, pursuant to 35 Pa.C.S.A. § 780–113(f)(1) and (3), to two consecutive terms of imprisonment, one term for delivery of the Tuinal, and one term for delivery of the Talwin.[1] A direct appeal was taken to this Court in which appellant alleged ineffective assistance

---

1. For sentencing purposes, the convictions for possession with intent to deliver merged with the convictions for delivery.

of trial counsel. This Court, by memorandum opinion, affirmed judgment of sentence on June 30, 1986.[2]

Appellant subsequently filed a petition under the Post-Conviction Hearing Act alleging that his post-trial counsel was ineffective for failing to challenge the legality of the sentence. Specifically, appellant claimed that post-trial counsel should have challenged the trial court's imposition of consecutive sentences which appellant claimed violated his constitutional right against double jeopardy. Appellant claimed that he was sentenced twice for the same criminal offense. Appellant also argued that the Commonwealth used perjured testimony to obtain his conviction and that post-trial counsel was ineffective for failing to raise this issue. Following a hearing held December 23, 1987, the trial court denied appellant's request for post-conviction relief. This timely appeal followed.

Appellant's only contention on appeal is that his trial counsel and post-trial counsel were ineffective in failing to raise and preserve in the trial court and in this Court on direct appeal the issue of whether the appellant should have been sentenced twice for the same criminal transaction. We find no merit to this contention.

■ Initially, we note that appellant's claim, that trial counsel was ineffective for failing to challenge in the trial court the legality of the sentence imposed, has been waived as it was not raised at the earliest stage of the proceedings at which trial counsel no longer represented appellant. *Commonwealth v. Cargo*, 498 Pa. 5, 19, 444 A.2d 639, 645 (1982); *Commonwealth v. House*, 371 Pa.Super. 23, 27, 537 A.2d 361, 363 (1988); *see also Commonwealth v. Fuller*, 353 Pa.Super. 120, 509 A.2d 364 (1986). The question we are concerned with in this appeal is whether appellate counsel was ineffective for failing to challenge, on direct appeal, the legality of the sentence imposed. Of course, this claim could have been presented directly as a challenge to the legality of sentence instead of indirectly *via* an ineffective assistance of counsel claim. We note, however,

2. *Commonwealth v. Swavely*, 357 Pa.Super. 639, 513 A.2d 1078 (1986).

that the election to present it in the form of an ineffectiveness claim has no practical effect on the disposition of this appeal.

■ Preliminarily, we note that the law presumes that counsel is effective and that the burden of establishing ineffective assistance of counsel rests upon the appellant. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Petras*, 368 Pa.Super. 372, 534 A.2d 483 (1987). In order to establish a claim of ineffectiveness, appellant must show that: by act or omission counsel was arguably ineffective; counsel's act or omission could not have had an objectively reasonable basis designed to effectuate appellant's interest; and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been more favorable to appellant. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *see also Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Carelli*, 377 Pa.Super. 117, 546 A.2d 1185 (1988); *Commonwealth v. Petras, supra.*

As stated previously, appellant's underlying claim is that imposition of separate consecutive sentences for delivery of two different prohibited narcotics in a single sale and in a single package violated the double jeopardy proscription against multiple sentences for a single offense and the Pennsylvania merger doctrine. After careful review, we find this claim wholly without merit.

## I. DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a sec-

ond prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Appellant's claim is that the trial court imposed separate consecutive sentences for a single offense. We are concerned, therefore, with only the third of these three guarantees. As such, the question we need to consider is whether delivery of a Schedule II drug and a Schedule IV drug in a single transaction constitutes the same offense for sentencing purposes.

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court enunciated the appropriate test to be applied to determine whether a single transaction violates two distinct statutory provisions. The Court stated:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of an additional fact which the other does not.* 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'

*Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. (Emphasis added). *See also United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Thus, for two crimes arising from the same transaction to constitute the same offense, a comparison of their statutory elements must reveal that proof of one offense will necessarily prove the other. *Illinois v. Vitale, supra.* Applying the test, we must conclude that here, although both counts arise from a

single sale, two offenses were committed as neither offense constitutes a lesser included offense of the other.[3]

Instantly, appellant was charged in separate counts with two violations of 35 Pa.C.S.A. § 780–113(a)(30), delivery of a controlled substance. Delivery is defined under the Act to mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 Pa.C.S.A. § 780–102. Thus, in order to find appellant guilty on count five, delivery of a Schedule II controlled substance, Tuinal, the jury had to conclude that there was a transfer of Tuinal from appellant to another person. However, in order to find appellant guilty of count six, delivery of a Schedule IV controlled substance, Talwin, the jury had to conclude that there was a transfer of Talwin from appellant to another person. Thus, delivery of Talwin is not a lesser offense to be included within the offense of delivery of Tuinal. Each offense includes an element distinctive of the other, *i.e.* the particular controlled substance. Therefore, we conclude that when the vial containing the two separate drugs was delivered, two separate offenses occurred, and sentencing on both offenses did not violate the Double Jeopardy Clause of the Fifth Amendment.

■ Additionally, the trial court found, and we agree, that assuming, *arguendo,* the delivery of the two drugs in one sale constituted a single offense, the double jeopardy clause would not be violated by cumulative punishments because our legislature specifically authorized it for the particular offense involved. *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980); *see also Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *United States v. Gomberg,* 715

3. An example of two crimes arising from the same transaction constituting the same offense is possession, 35 Pa.C.S.A. § 780–113(a)(16), and possession with intent to deliver, 35 Pa.C.S.A. § 780–113(a)(30). The proof necessary to convict a defendant of possession with intent to deliver includes proving all of the elements of possession. Thus, possession is a lesser included offense of possession with intent to deliver and the former merges with the latter for sentencing purposes.

F.2d 843 (3rd Cir.1983); *United States v. Boffa*, 688 F.2d 919 (3rd Cir.1982).

The statutory scheme of the Act divides the list of controlled substances established by the General Assembly into five separate categories. These five categories are designated in the Act as "Schedules" and are numbered Schedule I through Schedule V. The placement of a substance within a particular Schedule depends upon its potential for abuse, its accepted medical use, and its perceived dangerousness. 35 Pa.C.S.A. § 780–104. An examination of Schedule I through Schedule V reveals that Schedule I is concerned with the most dangerous controlled substances and each succeeding Schedule is concerned with progressively less dangerous controlled substances. *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979); 35 Pa.C.S.A. § 780–104; *see also Commonwealth v. Teada*, 235 Pa.Super. 438, 344 A.2d 682 (1975). Each Schedule in turn has various subsections. Generally, the placement of a controlled substance within a particular subsection is based upon whether the dangerousness of the particular substance requires that it be prohibited regardless of the quantity involved, or whether dangerousness of the particular substance depends upon the fact that the quantity involved has a "potential for abuse." *Commonwealth v. Driscoll, supra; Commonwealth v. Teada, supra;* 35 Pa. C.S.A. § 780–104(2), (3), and (4).

By categorizing controlled substances in this manner, the legislature has determined that all controlled substances are not alike, but that each is distinctive and that its treatment under the Act depends upon its peculiar dangerousness, potential for abuse, and medical usefulness. Thus, Section 780–104 is not merely a list of prohibited controlled substances; rather, it is a detailed expression of the legislature's qualitative analysis of the relative threat to the community posed by each of the various specified substances.

Recognizing that there are significant differences between controlled substances, the legislature authorized pun-

ishments which correspond with the relative threat to the community posed by an unauthorized possession, use, or transfer of the controlled substance involved. Section 780–113(f) provides:

Any person who violates clause (12), (14) or [clause] (30) of subsection (a) with respect to:

(1) A controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding *fifteen* years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity.

(1.1) Phencyclidine; methamphetamine, including its salts, isomers and salts of isomers[,]; coca leaves and any salt, compound, derivative or preparation of coca leaves; any salt, compound, derivative or preparation of the preceding which is chemically equivalent or identical with any of these substances, except decocanized coca leaves or extract of coca leaves, which extracts do not contain cocaine or ecgonine; and marihuana in a quantity in excess of one thousand (1,000) pounds, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding *ten* years, or to pay a fine not exceeding one hundred thousand dollars ($100,000), or both, or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal manufacture or distribution of these substances.

(2) Any other controlled substance or counterfeit substance classified in Schedule I, II, or III, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding *five* years, or to pay a fine not exceeding fifteen thousand dollars ($15,000), or both.

(3) A controlled substance or counterfeit substance classified in Schedule IV, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not

exceeding *three* years, or to pay a fine not exceeding ten thousand dollars ($10,000), or both.

(4) A controlled substance or counterfeit substance classified in Schedule V, is guilty of a misdemeanor and upon conviction thereof shall be sentenced to imprisonment not exceeding *one* year, or to pay fine not exceeding five thousand dollars ($5,000), or both.

35 Pa.C.S.A. § 780-113(f). (Emphasis added). Thus, the maximum punishment authorized depends initially upon the type of substance involved and in certain cases the amount of the substance involved.

Pursuant to authority delegated by the legislature, the Sentencing Commission has further refined the sentencing process for drug cases. The revised guidelines for sentencing in drug cases trichotomize the applicable sentencing ranges for narcotics, cocaine, phencyclidine, methamphetamine, and marijuana based on the quantity of the drug involved. There are also new offense gravity score listings for drug offenses which correspond to the new sentence range chart. *See New Guidelines Promulgated,* 5 Monitor, 1-3, 15-16 (Pa.S.C., April 1988); §§ 303.8(d), 303.9(c). These changes were specifically designed to remedy the perceived excessive leniency of the guidelines formerly in effect. *See New Guidelines Promulgated, supra,* at 1.

Generally speaking, the gradation and sentencing structure for drug offenses indicates an intent to delineate offenses by the drug involved and to determine where within the statutory limits to sentence the offender based upon the amount involved and other general sentencing factors. Logically, when *two drugs* are transferred in one illegal sale there are three possible sentencing alternatives under the applicable statutes and revised guidelines.

The first possible scenario involves the delivery, in a single sale, of two different forms of the same substance; *e.g.* marijuana and hashish. Because hashish falls within the statutory definition of marijuana, only one type of controlled substance has been provided and therefore separate convictions must merge for sentencing purposes. *See*

*Commonwealth v. Gruber,* 378 Pa.Super. 291, 548 A.2d 617 (1988). Pursuant to the revised guidelines, however, the weight of the marijuana and hashish would be aggregated for purposes of determining the applicable guideline ranges. Hence, both the marijuana and the hashish deliveries are considered in accessing the sentence to be imposed.

The second possible scenario involves the delivery of a mixture or compound, in a single unit, containing a detectable amount of more than one controlled substance. Pursuant to the new guidelines, the mixture or compound is to be deemed to be composed entirely of the controlled substance which has the longest suggested guideline penalties. 204 Pa.Code § 303.9(c)(1) (Sentence Range Chart). Again, the weight of both controlled substances are aggregated to determine the amount of the substance involved for sentencing purposes.

The third possible scenario is that presented in the instant case. Neither of the sentencing alternatives previously discussed is applicable here. Tuinal and Talwin do not constitute different forms of the same substance, and they were separated, rather than contained in a single compound, when delivered.

This particular scenario lends itself to two possible sentencing alternatives. First, the conviction for delivery of Talwin could be deemed to merge with the conviction for delivery of Tuinal and appellant would be sentenced for the delivery of the substance with the longer penalty. However, appellant would thereby avoid punishment for the offense of illegally delivering Talwin based solely on the fortuitousness of having made the transfer in a single sale in which an even more dangerous drug was also transferred. The second option is to recognize that while only one sale occurred, two separate offenses were committed and appellant should be sentenced separately for both offenses. In light of our legislature's concern with the drug problem facing our Commonwealth, we find the latter interpretation is the far more reasonable one.

We find that in setting forth, in separate statutory provisions, the punishments to be imposed for violations where the violation involves a particular type of substance, the legislature has given the courts the authority to impose separate sentences for the delivery of two *different* drugs, even though they were delivered in one transaction. As there is no language clearly and specifically indicating that the legislature intended, where more than one substance is involved, to have the defendant sentenced only with respect to the substance with the greatest penalty, we decline to interpret the statute in such a narrow manner. To do so would be wholly inconsistent with the manifest intent of the legislature to enhance deterrence of drug offenses by increasing authorized sanctions and authorizing guidelines which likewise indicate the grave nature of the threat which illegal drug trafficking presents to our Commonwealth and society in general. We find, therefore, that the trial court was correct in finding that the imposition of consecutive sentences was legal and within its discretionary authority.

## II. MERGER DOCTRINE

In a related assertion, appellant argues that even if multiple punishment does not place the appellant in double jeopardy, it is, nonetheless, a violation of the Pennsylvania merger doctrine. Again, we disagree.

The merger doctrine acts to limit the multiplicity of sentences which may be handed down for those crimes which, in effect, constitute a single crime. According to the decision by our Supreme Court in *Commonwealth v. Williams*, 514 Pa. 124, 522 A.2d 1095 (1987), there is a two pronged test which must be satisfied before merger of the two offenses is required:

First, the crimes must 'necessarily involve' one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest.

*Williams, supra*, 522 A.2d at 1101; *see also Commonwealth v. Williams*, 368 Pa.Super. 315, 534 A.2d 101 (1987).

In this case, the two separate offenses committed *did not necessarily involve one another.* Though contained in the same vial when transferred, neither offense required the existence of the other drug for its completion. Either offense could readily have been completed without the other. That appellant chose to complete both crimes in one transfer does not render one crime necessarily included in the other. Furthermore, we do not find, as appellant argues, that they both violated a single interest which the Commonwealth meant to protect. An examination of the language of the particular statute and the context in which each provision of the staLute appears in the Code leads us to the conclusion that the multiple sentences vindicate substantially different interests. *See Commonwealth v. Williams,* 368 Pa.Super. 315, 534 A.2d 101 (1987); *Commonwealth v. Williams,* 344 Pa.Super. 108, 496 A.2d 31 (1985).

A sentence imposed pursuant to 35 Pa.C.S.A. § 780–113(f)(1), carries a sentence of up to fifteen years. This provision of the Act deals with violations where the substance involved is a narcotic drug classified in Schedule I or Schedule II, which includes Tuinal.[4] A narcotic has been defined under the Act to mean "any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis: (i) opium, (ii) any opiate having an addiction-forming or addiction-sustaining capacity similar to morphine, but not including the isoquinoline alkaloids of opium, (iii) any compound, manufacture, salt, derivative, or preparation of opium or any opiate, and (iv) any substance, compound, manufacture, salt, derivative, or preparation

4. Tuinal, a moderately long-acting barbituate, is a central-nervous system depressant. In ordinary doses, the drug acts as a hypnotic. However, physicians have been warned that prolonged, uninterrupted use of barbituates (particularly the short-acting drugs), even in therapeutic doses, may result in psychic and physical dependence. Withdrawal systems due to physical dependence following chronic use of large doses of barbituates may include delirium, convulsions and death. *See Physicians' Desk Reference,* (39th Ed.1985) at 1176–77.

thereof, which is chemically identical with any of the substances referred to in (i), (ii) or (iii). Moreover, a review of § 780-104(2) reveals that the legislature has determined that a Schedule II drug has a high potential for abuse which may lead to severe psychic or physical dependence. *See* 35 Pa.C.S.A. § 780-104(2). Thus, the legislature promulgated legislation which imposes the most severe sentence for those persons convicted of possession or distribution of narcotic drugs classified as a Schedule II controlled substance. A sentence imposed pursuant to 35 Pa.C.S.A. § 780-113(f)(3), however, carries a maximum sentence of only three years. This provision concerns Schedule IV drugs which have been recognized as having a relatively low potential for abuse, but are still considered to be dangerous. See 35 Pa.C.S.A. § 780-104(4). Talwin is included in Schedule IV.[5]

By categorizing a controlled substance according to its degree of danger and potential for abuse and scaling the sentence to be imposed accordingly, the legislature has manifested a clear intent that the punishment imposed be inextricably linked with the particular drug or drugs involved in the transaction. Furthermore, we find the interest the legislature sought to vindicate, *i.e.* deterring drug use and drug trafficking, increases *qualitatively* as well as *quantitatively* with the dangerousness of the drug involved. To allow a defendant to deliver several drugs in one transaction but restrict his sentence because only one delivery occurred, regardless of the type of drugs sold, would undermine the legislative intent embodied in the Act, 35 Pa.C.S.A. § 780-101 *et seq.* and would depreciate the seriousness of the offense in a manner neither suggested nor warranted by statute or caselaw. This we cannot do, as such a construction would be inconsistent with the manifest

5. Talwin NX is an analgesic intended for oral use only. However, there have been instances of psychological and physical dependence on parenteral pentazocine in patients with a history of drug abuse. Furthermore, severe, potentially lethal, reactions may result from misuse of Talwin NX by injection either alone or in combination with other substances. *See Physicians' Desk Reference,* (42nd Ed.1988) at 2252-2253.

intent of the legislature. *See* 1 Pa.C.S.A. § 1901 *et seq.*
*See Commonwealth v. Abbott*, 319 Pa.Super. 479, 466 A.2d
644 (1983) (it is indisputable that the statute outlawing
traffic in prohibited substances is designed to banish the
dread evil that illegal drugs have inflicted upon individual
victims as well as upon society as a whole). Accordingly,
we hold that merger of the offenses is not warranted.

Based upon the foregoing, we find appellant's underlying
contention is wholly without merit, therefore, his appellate
counsel cannot be considered ineffective for failing to chal-
lenge the legality of this sentence on direct appeal. *Com-
monwealth v. Wells*, 513 Pa. 463, 468, 521 A.2d 1388, 1390
(1987).

Accordingly, we affirm the order of the trial court dis-
missing appellant's P.C.H.A. petition.

ORDER AFFIRMED.

POPOVICH, J., files a dissenting statement.

POPOVICH, Judge, dissenting:

Upon review of the majority's opinion, I dissent. I am
convinced that two separate judgments of sentence for
delivery of a controlled substance arising from a single
delivery of a single vial containing two different controlled
substances violate the double jeopardy proscription against
multiple punishments for a single offense.

The Drug Act prohibits: "the manufacture, delivery, or
possession with intent to manufacture or deliver, a con-
trolled substance...." 35 Pa.C.S.A. § 780–113(a)(30). A
controlled substance is defined as "a drug, substance, or
immediate precursor included in Schedules I through V of
this act." The focal point of the double jeopardy issue is
whether 35 Pa.C.S.A. § 780–113(a)(30) is read in conjunction
with the Schedules, thus, making the Schedule (or, as the
majority's opinion implies, the chemical make-up) of the
drug an element of the offense. The effect of the majori-
ty's opinion is that the Schedule or chemical make-up of the
drug is an element of the offense of delivery of the drug.
However, I am convinced that the Schedules were not

intended to be employed as an element of the drug offense itself, but rather the Schedules were created solely for the purposes of imposing sentences consistent with the individual drug's potential harm to society. In essence, the Schedules are merely a sentencing guideline based on the legislature's qualitative analysis of the individual drug's potential for harm.

In sum, I would hold that when two different drugs, contained in a single vial, are delivered in a single transaction, only one violation of the Drug Act occurs. The appellant is correct: The double jeopardy proscription against multiple punishments for a single offense has been violated; and appellate counsel was ineffective for failing to attack the legality of sentences. Accordingly, under the facts before us, the separate sentences for delivery should be vacated and a single sentence should be imposed based upon the drug in the Schedule with the greater possible sentence, that being Tuinal.