# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

JOSE GERMAN SANTOS       :    No. 66 EM 2024

           v.                      :

ATTORNEY GENERAL OF THE UNITED STATES       :

PETITION OF: UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT       :

## DISSENTING STATEMENT

**JUSTICE WECHT**

In 2017, Jose German Santos, a native of the Dominican Republic, but a lawful permanent resident of the United States of America, pleaded guilty in Pennsylvania to possession of a controlled substance with intent to deliver ("PWID"),[1] after having been found in possession of a substantial quantity of marijuana. Thereafter, the United States Department of Homeland Security initiated proceedings to have Santos deported under the Immigration and Nationality Act ("the Act"),[2] which deems a person to be "deportable" when that person "has been convicted of any law . . . relating to a controlled substance (as defined in section 802 of Title 21). . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana[.]"[3] Santos contested the deportation.

---

[1]      35 P.S. § 780-113(a)(30).

[2]      8 U.S.C. § 1227(a)(2)(B)(1).

[3]      *Id.*

Generally, "a state conviction triggers removal [under the Act] only if, by definition, the underlying crime falls within a category of removable offenses defined by federal law."[4] By referencing "section 802 of Title 21" in the definition of a deportable offense, the Act mandates that the federal government link an element of the underlying offense— here, PWID—to a controlled substance set forth in Title 21, which defines "controlled substances" for purposes of federal law.[5] In the initial immigration proceedings, Santos argued that his PWID conviction was not a deportable offense under the Act, because, under Pennsylvania law, the identity of the controlled substance possessed by a defendant is not a specific element of PWID. Stated otherwise, Santos maintained that, without proof of the identity of the drug that was the object of the PWID conviction, there was no way to know if that conduct was prohibited by federal law, as is required for removal under the Act. For instance, some drugs classified as controlled substances under Pennsylvania law are not so categorized under federal law.[6] Thus, because PWID does not require proof of the identity of the controlled substance, Santos posited, it cannot automatically be classified as a deportable offense.

The immigration judge and the Board of Immigration Appeals both rejected this argument. Santos appealed to the United States Court of Appeals for the Third Circuit, which, in turn, filed with this Court a "Petition for Certification of Question of Law." The

---

[4] *Mellouili v. Lynch*, 575 U.S. 798, 805 (2015) (citation and quotation marks omitted).

[5] *Mellouili*, 575 U.S. at 813; *see* 21 U.S.C. § 802 (defining "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter.").

[6] For instance, in its Petition for Certification of Question of Law, the United States Court of Appeals for the Third Circuit notes that "chorionic gonadotropin" is a controlled substance for purposes of Pennsylvania law but not for federal law. Petition for Certification of Question of Law, 10/11/2024, at 4.

Third Circuit panel first explained that, in *Commonwealth v. Swavely*,[7] the Pennsylvania Superior Court held that the identity of a particular drug was an essential element of a PWID conviction for purposes of double jeopardy. Then, the federal panel noted, in *United States v. Abbott*,[8] the Third Circuit found that the type of drug involved in a PWID conviction necessarily was an element of that offense, because, at the time, the sentence imposed upon a defendant convicted of PWID depended upon the type of crime involved. Thus, under both state and federal law, the identity of a controlled substance initially was considered to be an essential element of PWID.

However, two recent Pennsylvania decisions have cast some doubt on that principle. First, in *Commonwealth v. DiMatteo*,[9] this Court struck Pennsylvania's mandatory minimum sentencing scheme for certain drug offenses as unconstitutional under the United States Supreme Court's decision in *Alleyne v. United States*.[10] After *DiMatteo*, the Third Circuit explained, the type of drug possessed by a defendant convicted of PWID no longer has the "penal significance" that it did under *Swavely* and *Abbott*.[11]

Then, in 2020, in *Commonwealth v. Beatty*,[12] a defendant was charged with conspiracy to deliver both heroin and fentanyl, but the Commonwealth proved only that there existed an agreement to deliver heroin. The defendant argued that the evidence of a conspiracy was insufficient because the Commonwealth had presented no evidence

---

[7]    554 A.2d 946 (Pa. Super. 1989).

[8]    748 F.3d 154 (3d Cir. 2014).

[9]    177 A.3d 182, 191 (Pa. 2018).

[10]    570 U.S. 99 (2013).

[11]    Petition for Certification of Question of Law, 10/11/2024, at 6.

[12]    227 A.3d 1277 (Pa. Super. 2020).

related to fentanyl. The Superior Court rejected the argument. The court held that, because heroin and fentanyl are both controlled substances, the defendant would have been subject to the same penalty provision. In other words, according to the Third Circuit, when imposing punishment for PWID, "the identity of the drug . . . made no difference to the defendant's sentencing exposure,"[13] and, consequently, the Commonwealth was under no obligation to identify the controlled substance(s) at issue.

In the Third Circuit's view, *Beatty* "suggests that specific drug identity is no longer an 'element' that the Commonwealth must prove to sustain a PWID conviction."[14] This contradicts its holding in *Abbott*, which was based upon Pennsylvania's former (and now unconstitutional) mandatory minimum sentencing scheme, and calls into question *Swavely*'s express holding that "the particular type of drug is an element" of PWID in Pennsylvania.

Given the changes in Pennsylvania law, the Third Circuit found it "both appropriate and necessary to revisit the *Abbott*-line of cases" before determining whether Santos can be deported under the Act. That court filed a petition with this Court specifically asking for clarification on this evolving area of Pennsylvania law. Today, the Court rejects the Third Circuit's reasonable request. This Court is wrong to do so.

This Court denies the Third Circuit's petition because it deems the question of law posed by the Third Circuit to be one that we have "previously decided."[15] However, the question asked of this Court is not the same one that was decided in *Abbott*, as the law upon which that decision was based has seemingly been reversed. The Third Circuit cogently presents in its petition to this Court how the law has changed since 2014 and

---

[13] Petition for Certification of Question of Law, 10/11/2024, at 7-8.

[14] *Id.* at 8.

[15] *See* Order, 1/27/2025 (quoting Pa.R.A.P. 3341(c)).

explains that it does not consider *Abbott* presently to be on sound jurisprudential footing. The question in *Abbott* was whether identity of the controlled substance was an element of PWID *at that time*. The question asked by the Third Circuit today is whether such is the case *now*.

Pennsylvania Rule of Appellate Procedure 3341(c) affords this Court the discretion to "accept certification of a question of Pennsylvania law" when "there are special and important reasons" to do so. Such reasons exist when the "question of law is one with respect to which there are conflicting decisions in other courts" and when the "question of law concerns an unsettled issue of the . . . construction . . . of a statute of this Commonwealth."[16] Given the conflict between *Abbott* and *Beatty* and *DiMatteo*, and given the fact that the construction of Pennsylvania's PWID statute is directly at issue here, the question of law posed by the Third Circuit implicates both of these "substantial and important" reasons.

The answer to the question is not a foregone conclusion. To the contrary, the Third Circuit's petition has garnered substantial debate, as evidenced by the substantial briefing by, and correspondence between, the parties. There also have been multiple *amicus* briefs filed by interested organizations. Nor is this case of little significance. The consequence of the Third Circuit's decision here, and in future cases—deportation—is severe. For these reasons, the Third Circuit unanimously asked for our guidance before proceeding, as it believes that our law on this important question is unclear. We should provide that guidance. Not only are we authorized to do so under Rule 3341(c), but, to the extent that this is even a close call, we should defer as a matter of comity to the federal court's reasonable request. This Court instead turns the Third Circuit down. I respectfully dissent.

---

[16] Pa.R.A.P. 3341(c)(2)-(3).

Chief Justice Todd joins this dissenting statement.