PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1562
_____

UNITED STATES OF AMERICA

v.

ROGER HENDERSON,
                                  Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-13-cr-00134-001)
District Judge: Honorable David S. Cercone
_____

Argued November 6, 2015
_____

Before: FUENTES, JORDAN, and VANASKIE, *Circuit
Judges.*

(Opinion Filed: November 8, 2016)
_____

Rebecca R. Haywood, Esq.
Laura S. Irwin, Esq. **(ARGUED)**
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee, United States of America*


Linda E. J. Cohn, Esq.
Renee Pietropaolo, Esq. **(ARGUED)**
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

*Counsel for Appellant, Roger Henderson*

———————

O P I N I O N

———————

VANASKIE, *Circuit Judge.*

Roger Henderson appeals the District Court's determination that he was an Armed Career Criminal pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). To resolve this case, we must determine whether 35 Pa. Stat. Ann. § 780–113(f)(1) of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act is "divisible" and subject to the modified categorical approach

2

in light of the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). We find that it is, and that the District Court properly used the modified categorical approach to determine that Henderson had three qualifying predicate offenses under ACCA. We will affirm.

## I.

The underlying facts are not in dispute. On October 6, 2012, detectives who were conducting surveillance on a middle school in Pittsburgh, Pennsylvania observed Henderson in the bleachers with a firearm and called uniformed police officers to the scene. When the uniformed officers arrived, Henderson slid the firearm from his waistband, placed it behind a seat, and walked away. The uniformed officers recovered the weapon and placed Henderson under arrest after recognizing him as a known felon.

A grand jury returned an indictment charging Henderson with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Henderson entered a guilty plea on March 6, 2014. Henderson's Presentence Investigation Report revealed that Henderson had at least three qualifying convictions for serious drug offenses within the meaning of ACCA.[1]

---

[1] If convicted under 18 U.S.C. 922(g), ACCA provides for a minimum fifteen year sentence when a defendant has three previous convictions for serious drug offenses. *See* 18 U.S.C. § 924(e)(1) ("In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a

3

Henderson objected to the classification of two of his prior convictions as serious drug offenses. The District Court disagreed, finding that three of Henderson's prior convictions were ACCA serious drug offenses within the meaning of ACCA.

Specifically, the District Court, referencing various charging instruments and other pertinent documents, found that Henderson had separate convictions for possession with intent to deliver cocaine on June 25, 2002; possession with intent to deliver cocaine on January 25, 2004;[2] and possession with intent to deliver heroin on March 13, 2009. Each conviction was for a violation of 35 Pa. Stat. Ann § 780–113(a)(30), and the District Court concluded that each conviction constituted "a serious drug offense within the meaning of the ACCA." (App. 11.) Henderson was sentenced to the mandatory minimum prison term of fifteen years. This appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C.

---

violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years").

[2] The substance charged in the underlying state court indictment actually was heroin, not cocaine, as stated by the District Court. The District Court's error is inconsequential.

4

§ 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over purely legal questions, such as Henderson's legal challenge to the District Court's application of ACCA. *See United States v. Jones*, 332 F.3d 688, 690 (3d. Cir. 2003). We review Henderson's challenge to the constitutionality of ACCA *de novo*. *See United States v. Fontaine*, 697 F.3d 221, 225 n.7 (3d Cir. 2012).

## III.

Henderson argues that two of his previous convictions do not qualify as serious drug offenses under ACCA. We disagree.[3]

---

[3] Henderson also challenges the constitutionality of ACCA, arguing that his Fifth and Sixth Amendment rights were violated when his sentence was increased due to three prior convictions that were not charged in the indictment. As Henderson concedes, however, this argument is foreclosed by *Almendarez–Torres v. United States*, 523 U.S. 224 (1998). Justice Thomas, concurring in *Descamps v. United States*, 133 S. Ct. 2276, 2295 (2013), observed that the Supreme Court has not yet reconsidered *Almendarez–Torres*, which draws an exception to the *Apprendi* line of cases for judicial fact-finding that concerns a defendant's prior convictions." We, of course, remain bound by *Almendarez–Torres*, because only the Supreme Court has the power to overrule one of its precedents, even where the viability of that precedent has been called into question by subsequent Supreme Court decisions. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We reaffirm that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in

5

Under ACCA, a "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The State law at issue here is Pennsylvania's Controlled Substance Act, which prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 Pa. Stat. Ann. § 780–113(a)(30). Section 780–113(f)(1) of Pennsylvania's Controlled Substance Act sets forth the following penalty for violating Section 780–113(a)(30) of the statute:

> (f) Any person who violates clause . . . (30) of subsection (a) with respect to:
>
>> (1) A controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to

some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal quotation marks omitted)).

imprisonment not exceeding
fifteen years . . . .

35 Pa. Stat. Ann. § 780–113(f)(1) (internal footnote omitted).
Notably, this section disjunctively incorporates all of the
"controlled substances classified in Schedule I or II" as the
substances for which a defendant may receive a maximum
sentence of fifteen years for possession with intent to deliver.
*See id*. (footnote omitted). In order to identify the
"substances classified in Schedule I or II," Section 780–
113(f)(1) cross-references Section 780–104 of Pennsylvania's
Controlled Substance Act, which provides an exhaustive list
of controlled substances that fall within each schedule of
prohibited drugs. *See* 35 Pa. Stat. Ann. §§ 780–104(1), (2).

To determine whether Henderson's convictions under
Pennsylvania's Controlled Substance Act are ACCA
predicate offenses, we employ a "categorical approach" that
involves comparing "the elements of the statute forming the
basis of the defendant's conviction with the elements of the
'generic' crime—*i.e.*, the offense as commonly understood."
*Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).
When applying the categorical approach, we "'look only to
the statutory definitions'—*i.e.*, the elements—of a
defendant's prior offenses, and *not* 'to the particular facts
underlying those convictions.'" *Id.* at 2283 (quoting *Taylor v.
United States,* 495 U.S. 575, 600 (1990)). The Supreme
Court has explained that "[t]he prior conviction qualifies as
an ACCA predicate only if the statute's *elements* are the same
as, or narrower than, those of the generic offense." *Id.* at
2281 (emphasis added). In other words, "when a statute sets
out a single (or 'indivisible') set of elements to define a single

7

crime," this Court's analysis is "straightforward" because we need only "line[] up that crime's elements alongside those of the generic offense and see[] if they match." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

Our analysis, however, is not as straightforward when faced with statutes that "list[] multiple, alternative elements" that must be proven to secure a conviction for violating the statute. *See Descamps*, 133 S. Ct. at 2285. These statutes are known as "divisible statutes," *id.* at 2284, because they "list elements in the alternative, and thereby define multiple crimes." *Mathis*, 136 S. Ct. at 2249. When faced with divisible statutes, we apply a "modified categorical approach" that allows us "to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Descamps,* 133 S. Ct. at 2281. The modified categorical approach permits us to "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id.*; *see also id.* at 2285 (noting that "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute" because it "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime").

In *United States v. Abbott*, we determined that Section 780–113(a)(30) of Pennsylvania's Controlled Substance Act—the section that underlies Henderson's previous convictions—is "divisible" and subject to the modified categorical approach. 748 F.3d 154, 156 (3d Cir. 2014). Henderson argues that *Abbott* is distinguishable because the prior conviction at issue in *Abbott* involved cocaine, for which defendants are sentenced under Section 780–

113(f)(1.1) of Pennsylvania's Controlled Substance Act. 35 Pa. Stat. Ann. § 780–113(f)(1.1). Here, on the other hand, Henderson stresses that his convictions were under Section 780–113(f)(1), therefore requiring a different analysis because the Schedules in Section 780–113(f)(1) contain more substances than the federal schedules.[4] Because Section 780–113(f)(1) lists more substances, Henderson contends Section 780–113(f)(1)'s listing of controlled substances under "Schedule I or II" makes Section 780–113(f)(1) indivisible, such that the modified categorical approach does not have a role to play. Specifically, he maintains that Section 780–113(f)(1) is indivisible because he contends it addresses different *means* of committing the offense, rather than different *elements*. We disagree. In light of the Supreme Court's recent decision in *Mathis*, 136 S. Ct. 2243, we find Section 780–113(f)(1) is divisible because it addresses different elements of the offense; not the different means of committing the offense.

In *Mathis*, the Supreme Court reiterated that we may use the categorical approach to analyze a statute if it "lists multiple elements disjunctively," but may not do so if a statute "enumerates various factual means of committing a single element." 136 S. Ct. at 2249. Accordingly, the Court explained that "[t]he first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." *Id.* at 2256. "If they are elements," the Court explained, we should

---

[4] The Government concedes that Schedules I and II from Section 780–113(f)(1) contain more drugs than—and thus do not completely overlap with—the federal schedules.

9

"review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." *Id.* "[I]f instead they are means," however, the Supreme Court explained that we have "no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.*

Given the importance of the threshold inquiry—elements or means—the Supreme Court stressed that "[d]istinguishing between elements and facts is [] central to ACCA's operation." 136 S. Ct. at 2248. The Court explained that "[e]lements are the constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction." *Id.* (citation omitted); *see also id.* ("At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty.") (internal citations omitted). By contrast, the Court explained that "[f]acts . . . are mere real-world things—extraneous to the crime's legal requirements." *Id.*; *see also id.* ("They are circumstance[s] or event[s] having no legal effect [or] consequence: In particular, they need neither be found by a jury nor admitted by a defendant.") (citation omitted).

In *Mathis*, the Supreme Court outlined three methods for sentencing courts to make the elements/means determination. First, the sentencing court should ascertain whether "a state court decision definitively answers the question . . . ." *Mathis*, 136 S. Ct. at 2256. Second, the District Judge may look to "the statute on its face," which "may resolve the issue." *Id.* Finally, explained the Court, "if state law fails to provide clear answers," sentencing courts may look to "the record of a prior conviction itself." *Id.*

10

These three approaches confirm that Section 780–113(f)(1) is divisible and subject to the modified categorical approach, and that the District Court properly found that Henderson's prior convictions were ACCA predicates.

**A.**

For the first and "easy" method outlined by the Supreme Court, we look to see if a Pennsylvania state court decision definitively answers the question. *Mathis*, 136 S. Ct. at 2256. "When a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.* (citing *Schad v. Arizona,* 501 U.S. 624, 636 (1991) (plurality opinion)). In *Abbott*, we recognized that the Pennsylvania Superior Court has ruled that the particular type of drug is an element of the offense under Section 780–113(a)(30). *See* 748 F.3d at 159 n.4 (citing *Commonwealth v. Swavely*, 554 A.2d 946 (Pa. Super. Ct. 1989), *petition for allowance of appeal denied*, 571 A.2d 382 (Pa. 1989)). Specifically, as it pertains to the delivery of controlled substances under Section 780–113(a)(30), the Pennsylvania Superior Court found that the specific type of drug used was an element of the offense; not a means of committing the offense. *See Swavely*, 554 A.2d at 949 ("[W]hen the vial containing the two separate drugs was delivered, two separate offenses occurred."). As the Superior Court in *Swavely* explained:

> [I]n order to find appellant guilty of count six, delivery of a Schedule IV controlled substance, [Drug 1], the jury had to conclude that there was a transfer of [Drug 1] from appellant to another person. Thus, delivery of [Drug 1]

11

> is not a lesser offense to be included within the offense of delivery of [Drug 2]. Each offense includes an element distinctive of the other, *i.e. the particular controlled substance*.

*Id.* (emphasis added); *see also Commonwealth v. Smith*, No. 1140, 2013 WL 11253788, at *3 (Pa. Super. Ct. Sept. 23, 2013) ("Appellant was found in possession of three different controlled substances. Each would support a separate criminal count"); Pennsylvania Bar Institute, Pennsylvania Suggested Standard Criminal Jury Instructions §§16.01, 16.13 (a)(30)(B) (3d Ed. 2016).

The same logic applies with respect to Section 780–113(f)(1). In order to find Henderson guilty of possession of heroin, a jury would have to conclude that Henderson, in fact, possessed that specific drug which has been classified as a controlled substance in Schedule I or II by the Pennsylvania General Assembly. Those particular controlled substances are, thus, distinct elements of the crime; not means of committing the crime.[5] Therefore, as dictated by the

---

[5] This approach is also in accord with our previous rulings. As we explained in *United States v. Tucker*, "[p]ossession (or manufacture, or delivery) of a controlled substance is an element of the offense [under Section 780–113(a)(30)]; to prove it, the prosecution must prove that the substance in question was one of those enumerated in Pennsylvania's controlled substance schedules. . . ." 703 F.3d 205, 215 (3d Cir. 2012). Henderson contends that *Commonwealth v. Kelly*, 409 A.2d 21 (1979), supports his

Pennsylvania state courts, Section 780–113(f)(1) sets forth different elements of the offense; not different means.

**B.**

The second method outlined by the Supreme Court leads to the same conclusion. For the second method, the Supreme Court directs us to consider the language of Section 780–113(f)(1) to make the elements or means distinction. *Cf. Mathis*, 136 S. Ct. at 2256. Specifically, the Court explained that if "statutory alternatives carry different punishments, then . . . they must be elements." *Id*. (citations omitted). On the other hand, the Court explained that "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (citing, *inter alia*, *United States v. Cabrera-Umanzor*, 728 F.3d 347 (4th Cir. 2013)).

Henderson points to the Fourth Circuit's opinion in *United States v. Cabrera-Umanzor* to support his argument that Section 780–113(f)(1) provides different "means" of committing the offense rather than different "elements." In

argument that the specific Schedule I or II drugs are means and not elements. This same argument was advanced in *Tucker* and *Abbott.* Both times "[w]e addressed th[e] contention . . . and rejected it." *Abbott*, 748 F.3d at 159 n.5 (citing *Tucker*, 703 F.3d at 215–16). *Abbott* remains good law. *See Avila v. Attorney Gen.*, 826 F.3d 662, 666 (3d Cir. 2016) ("The statute under which [petitioner] was convicted, 35 Pa. Cons. Stat. § 780–113(a)(30), is divisible with regard to both the conduct and the controlled substances to which it applies.") (citing *Abbott*, 748 F.3d at 159). We see no reason to find otherwise here.

13

*Cabrera-Umanzor*, however, the Fourth Circuit addressed a statute that was fundamentally different from the statute before us now because the statute at issue in *Cabrera-Umanzor* addressed sexual abuse of children and provided a list of sex crimes that Maryland's highest court found to be "'merely illustrative . . . .'" 728 F.3d. at 353 (quoting *Walker v. State*, 69 A.3d 1066, 1084 (Md. 2013)). Because Maryland's state courts had deemed the list of sex crimes in the statute to be illustrative, the Fourth Circuit rightly found that the crimes listed "simply provide[d] examples of acts that come within the [statutory] definition," and "serve[d] only as a non-exhaustive list of various means by which the elements of sexual molestation or sexual exploitation can be committed." *Id.* (citations omitted).

Here, far from offering a list of illustrative examples, Section 780–113(f)(1) provides a list of specific statutory alternatives by cross-referencing the "Schedule I or II" controlled substances listed in Section 780–104—a disjunctive and exhaustive list of stand-alone alternative definitions that captures the entire universe of substances for which defendants may be convicted and given separate maximum sentences for possession with intent to deliver under Section 780–113(f)(1).[6] By cross-referencing Section

---

[6] Henderson argues that Section 780–104 of Pennsylvania's Controlled Substance Act provides a non-exhaustive and "illustrative" list of substances. He places a particular emphasis on Section 780–104's language stating that the "schedules include the controlled substances listed or to be listed . . . ." 35 Pa. Stat. Ann. § 780-104. This language, however, does not indicate that the schedules are meant to be

14

780–104, Section 780–113(f)(1) criminalizes the possession of specific substances listed in Schedules I or II, creating several alternative elements; not separate means of commission. *Cf. Coronado v. Holder*, 759 F.3d 977, 984 (9th Cir. 2014), *cert denied*, 135 S. Ct. 1492 (2015) (concluding that a California controlled substances statute that "identifies a number of California drug schedules and statutes and organizes them into five separate groups, which are listed in the disjunctive" is divisible and that use of the modified categorical approach was appropriate).[7] Accordingly, we find that, on its face, Pennsylvania's Controlled Substances Act provides a clear answer with respect to the elements or means inquiry, and is different from the statute at issue in *Cabrera-*

illustrative. To the contrary, even though other substances may be added or removed through administrative or legislative processes, 35 Pa. Stat. Ann. § 780–103, Section 780–104 specifically indicates that "[t]he [] controlled substances [listed] are included in [the] schedules . . . ." 35 Pa. Stat. Ann. §§ 780-104(1), (2); *see also* 28 Pa. Code § 25.72 (noting that Section 780–104 "designates *specific* substances for inclusion under the five schedules") (emphasis added). Thus, Section 780–104 does not provide an "illustrative" list of substances, because only the specific controlled substances listed in Section 780–104 will fall within the purview of Section 780–113(f)(1).

[7] Notably, the statute at issue in *Coronado* was strikingly similar to the statute at issue here, as it provided that a person who "possesses any controlled substance which is [] classified in Schedule III, IV, or V . . . . shall be punished . . . ." 759 F.3d at 983.

15

*Umanzor*, because Section 780–113(f)(1) provides an exhaustive list of *all* the specific controlled substances that the Act intends to cover, thereby creating separate elements. Section 780–113(f)(1) does *not* attempt to illustrate the different means of carrying out the offense—*i.e.*, the countless ways people may manufacture, distribute, or possess the specified controlled substances.[8]

## C.

The third method outlined by the Supreme Court in *Mathis* leads to the same result. The final method from *Mathis* calls for an examination of "the record of a prior conviction itself" in order to make the means or elements determination. 136 S. Ct. at 2256. Specifically, the Court explained that sentencing courts may take a "peek at the [record] documents [] for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." *Id.* at 2256-57 (all alterations in original) (citation and quotation omitted). When taking this peek, the Court emphasized that the record materials must "speak plainly . . . .

_____

[8] Note that the Fourth Circuit has since distinguished its *Cabrera-Umanzor* decision. *See United States v. Vinson*, 794 F.3d 418, 425-26 (4th Cir. 2015) (distinguishing *Cabrera-Umanzor* and concluding that the statute at issue in *Vinson* – N.C. Gen. Stat. § 14–33(c)(2) concerning domestic violence – was divisible because it was "fundamentally different," as "[t]he nature and operation of the [elements of the statute] indicate[d] that they operate as alternate definitions or elements for the offense . . . not alternate means of committing the offense.")

to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense." *Id.* at 2257(quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)). This leads to Henderson's alternative argument: that the documents underlying his felony conviction under Section 780–113(a)(30) stemming from a January 25, 2004 indictment do not establish a serious drug offense under ACCA. Again, we disagree and find that the District Court did not err in determining that Henderson's conviction on the January 25, 2004 indictment qualifies as a serious drug offense under ACCA.

Here, the District Court properly looked to Henderson's charging instrument, change of plea form, sentencing order, and a conviction document to makes its determination that Henderson "pled guilty to and was sentenced for a serious drug offense within the meaning of the ACCA." (App. 11.) Henderson argues that the documents—in particular, the charging instrument and the conviction document from the convicting court—did not establish with certainty that this conviction was a serious drug offense under ACCA. A review of the record reveals this is simply not the case.

The conviction at issue here stemmed from "count two" of the indictment at "Criminal Action No. 2004[0]-2883." (App. 9 (citing (App. 68.))) Count two of the cited indictment specifically states that Henderson was charged with possessing "Heroin." (App. 68.) Because the second qualifying conviction was for heroin, we find that the District Court did not err by looking to Henderson's charging instrument to make the determination that Henderson's second qualifying conviction was a serious drug offense under ACCA.

17

With respect to the conviction document relied upon by the District Court, Henderson contends that the conviction document used was not proper because it was not his "actual" conviction document.[9] Actual conviction documents, however, are not required to provide the requisite certainty demanded by the Supreme Court. *See Shepard*, 544 U.S. at 26 (explaining that sentencing courts may look to "the charging document . . . or . . . *some comparable judicial record of this information*") (emphasis added); *see also United States v. Howard*, 599 F.3d 269, 272 (3d Cir. 2010) ("This Court has never established a *per se* rule that certified copies of a conviction must be offered by the government before a judge may determine a defendant's career offender status"). Indeed, we have deemed "other reliable judicial records," *id.* at 273, to be sufficient, including incomplete certified conviction records and docket entries because we have found that "both . . . are 'records of the convicting court.'" *Id.* at 272–73 (quoting *Shepard*, 544 U.S. at 23) (footnote omitted).

The District Court relied on a form entitled, "Report of Courts Showing the Conviction of Certain Violations of the Controlled Substance, Drug, Device and Cosmetic Act." (App. 70.) This form is a reliable judicial record.[10] Thus,

_____

[9] Henderson's actual conviction document is not in the record.

[10] The "Report of Courts" form was completed by the Clerk of Courts in the Court of Common Pleas for Allegheny Pennsylvania and was "to be used for reporting the [] listed violations of the Controlled Substance, Drug, Device and Cosmetic Act . . . ." (App. 70.) Notably, this judicial record

18

there was no error in considering it along with the other mutually corroborating records relied upon by the District Court. These "are the type of judicial records that are permissible for sentencing courts to use to establish past convictions for sentencing purposes." *Howard*, 599 F.3d at 273; *cf. Shepard*, 544 U.S. at 23. Thus, the District Court properly determined that Henderson's conviction on the January 24, 2004 indictment involved heroin, which is a controlled substance under 21 U.S.C. § 802, and was a predicate offense for the imposition of ACCA's fifteen-year minimum sentence.

## IV.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

from the convicting court indicated that Henderson was convicted of violating Section 780–113(a)(30), and specifically indicated that the violation was a felony. Because this form was a "record[] of the convicting court," *Howard*, 599 F.3d at 273 (quoting *Shepard,* 544 U.S. at 23), we find that the form was a reliable judicial record.