NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1622
_____

UNITED STATES OF AMERICA

v.

JEROME KING,
                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1-16-cr-00321-001
District Judge: The Honorable Sylvia H. Rambo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 10, 2018

Before: SMITH, *Chief Judge*, McKEE, and FISHER, *Circuit Judges*

(Filed: January 30, 2019)
_____

OPINION[*]
_____

SMITH, *Chief Judge*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jerome King entered a conditional guilty plea to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), retaining the right to appeal the denial of his motion to suppress and to challenge the applicability of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[1]  King asserts that the District Court erred in concluding: (1) that the "emergency aid exception" to the warrant requirement of the Fourth Amendment justified the warrantless entry into his apartment that led to the seizure of the firearm; and (2) that his previous drug offenses under Pennsylvania law do not count as predicate offenses for purposes of the ACCA.  Neither contention has merit.  Accordingly, we will affirm.

I.

Jerome King was arrested in Harrisburg, Pennsylvania, on July 6, 2016 after police responded to a report of a man with a shotgun threatening his neighbors.  The first arriving officer observed a man walking outside of a building—later identified as King— who matched the caller's description.  Because the dispatch had warned of an armed suspect, the first arriving officer waited for backup.  When backup arrived, King entered the building through a fire escape while a woman emerged from the same building.

At the officers' request, the woman yelled for King, who reemerged from the building's main entrance.  A protective pat down of King did not yield any weapons.  Officers observed three small children, appearing to be under the age of six, standing on

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

the landing of the fire escape that King had ascended earlier. When the children reentered the building, the first arriving officer decided to check on the situation to assure the children's well-being. He climbed the fire escape and entered a hallway, where he observed an open apartment door to his right. Through the apartment door, the officer saw the children and a partially covered shotgun which lay on an ottoman located between the children and the door. The officer radioed the officers outside the building to arrest King. He then entered the apartment and seized the shotgun.

A grand jury returned an indictment charging King with unlawful possession of a firearm by a felon (18 U.S.C. § 922(g)(1)), possession of an unregistered short barrel shotgun (26 U.S.C. §§ 5841, 5861(d), and 5871), and possession of a short-barrel shotgun not identifiable by a serial number (26 U.S.C. §§ 5841, 5861(i), and 5871). The government also charged King as an armed career criminal under 18 U.S.C. § 924(e) due to his four previous convictions for drug offenses under Pennsylvania law.

King filed motions to suppress the shotgun and other items later recovered by the police from his apartment, as well as statements he made following his arrest. The District Court denied his motions. Pursuant to an agreement, King entered his conditional plea. The agreement preserved King's right to appeal the denial of his motion to suppress the shotgun and to challenge the applicability of the ACCA. Although King argued that he did not qualify as an armed career criminal, the District Court disagreed. The judge adopted that portion of the presentence report ("PSR") that determined King was an armed career criminal, then varied downward from the

3

calculated Sentencing Guidelines range of 188 to 235 months, imposing the mandatory minimum sentence of 180 months' imprisonment.

## II.

King challenges the District Court's conclusion that the warrantless entry of the apartment and seizure of the shotgun, despite being in plain view and near children, was permissible under the emergency aid exception. We review factual determinations relating to a motion to suppress for clear error and legal determinations relating to those facts *de novo*. *United States v. Mallory*, 765 F.3d 373, 381-83 (3d Cir. 2014). Because we find that the officer's actions were a reasonable response to a true threat to the safety of the children, we will affirm the District Court.

A key component to the emergency aid exception is "the existence of a true emergency." *Id.* at 384 (internal citation and quotation marks omitted). In a case involving the warrantless seizure of firearms, we determine whether the emergency aid exception applies by examining multiple, non-exhaustive factors, including how soon after the alleged offense the search occurred; whether the premises had been secured; whether others were free to move about the scene unsupervised; how easily someone could have obtained and used the firearm; and the degree of intrusiveness of the search. *See id.* at 386.

Applying these factors to King's case, we see no error in the District Court's finding that the officer's actions were "reasonable under the Fourth Amendment." A136. The scene was still active, the apartment was not secure, and there were unsupervised

4

children in the vicinity of a firearm.  Additionally, the degree of intrusiveness was minor and limited to what was needed to protect the children; the shotgun was in plain view and near the open door, and the officer entered the apartment only as far as needed to secure the weapon.   The District Court did not err in determining that the officer reasonably believed that his action was necessary to protect the children.  *See Mallory*, 765 F.3d at 386.

King contends that the scene was under control and that there was no indication that the children would touch the shotgun, thereby obviating any imminent threat. Furthermore, King argues that the police officer had other options to protect the children without entering and seizing the shotgun.  According to King, he could have asked the children to exit the apartment or asked their mother to enter and ensure they stayed away from the shotgun.  While we acknowledge the possibility of other courses of action— whether or not they would have been feasible or safer—we disagree that these hypothetical, retrospectively-identified alternatives compel a conclusion that the officer acted unreasonably.  The emergency aid exception exists because there are situations where a delayed response "would gravely endanger . . . the lives of others[,]" making speedy and decisive action essential.  *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-99 (1967).  Young children in close range of an unattended firearm are in obvious danger.  We see no error in the District Court's application of the emergency aid

exception under such circumstances.[2]

### III.

King next challenges the PSR's conclusion that he qualifies as an armed career criminal. King asserts that his four previous state law drug convictions do not count as "serious drug offenses" under the ACCA. *See* 18 U.S.C. § 924(e)(2). He contends that the Pennsylvania statute under which he was convicted[3] sweeps too broadly, encompassing mere offers to sell controlled substances. Consequently, King argues these offenses fall outside of the ACCA's definition and make its application inappropriate.[4]

We review *de novo* properly raised questions of law concerning the ACCA, *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016), and hold that convictions under § 780-113(a)(30) count as "serious drug offenses" under the ACCA.

Since the submission of briefs in this case, King's argument has been largely foreclosed by our decision in *United States v. Glass,* 904 F.3d 319 (3d Cir. 2018). In *Glass*, we rejected a similar argument, albeit under plain error review, regarding the definition of a "controlled substance offense" under § 4B1.2 of the Guidelines. *Id* at 324.

---

[2] The Government also argued that the seizure of the shotgun would be legal under the inevitable discovery doctrine. Because we hold that the seizure was lawful under the emergency aid exception, we need not reach the inevitable discovery issue.

[3] 35 Pa. Cons. Stat. § 780-113(a)(30).

[4] In pertinent part, the ACCA defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed . . . ." 18 U.S.C. § 924(e)(2)(A)(ii).

Significantly, we noted in *Glass* that Pennsylvania's controlled substances statute has a separate section, § 780-113(a)(1), that explicitly criminalizes "offering for sale" any controlled substances, language not present in § 780-113(a)(30). *See Glass*, 904 F.3d at 322-23. This omission indicates that the conduct encompassed in § 780-113(a)(30) does not include offers to sell. Accordingly, we hold that King's previous drug offenses were appropriately classified as predicate offenses for the ACCA.

For the reasons set forth above, we will affirm the judgment of the District Court.