**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No. 18-2967

UNITED STATES OF AMERICA

v.

JULIO AVILES, SR.,
                              Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.:  1-15-cr-00181-001)
District Judge:  Honorable John E. Jones, III

Argued on July 9, 2019

(Opinion filed: September 12, 2019)

Before:  McKEE, ROTH and RENDELL, Circuit Judges

Daryl F. Bloom
Stephen R. Cerutti, II **(Argued)**
Office of United States Attorney
228 Walnut Street
P. O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA   17108

Counsel for Appellee


Quin M. Sorenson **(Argued)**
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA   17101

Counsel for Appellant

O P I N I O N

**RENDELL**, Circuit Judge:

Appellant Julio Aviles, Sr. was charged with various federal drug trafficking crimes and related offenses based, in large part, on evidence obtained pursuant to a search warrant. Aviles moved to suppress evidence obtained in the search or, alternatively, for a hearing to challenge the validity of the warrant.  The District Court denied his motion, and he was

2

convicted on all counts. At sentencing, the Government sought a term of mandatory life imprisonment pursuant to the Controlled Substances Act, 21 U.S.C. § 841(b), arguing that Aviles's prior state court convictions qualified as "felony drug offenses" under the statute. The District Court agreed and sentenced him accordingly. Aviles appeals the denial of his motion to suppress evidence obtained pursuant to the warrant and the District Court's order sentencing him to life imprisonment. We will affirm the District Court's denial of his motion to suppress, but, because we hold that at least two of his prior convictions do not qualify as felony drug offenses, we will vacate the District Court's sentencing order and remand for resentencing.

I.

In the course of investigating reports that Aviles was conducting a drug trafficking operation, the Lebanon County Drug Task Force applied for a search warrant to search, among other locations, Aviles's residence. In the affidavit of probable cause in the warrant application, Detective Ryan Mong and Sergeant Brett Hopkins, the affiants, relied upon information gathered through multiple controlled buys conducted by a confidential information, "RCI-1." The affidavit states that RCI-1 was involved in a total of eight successful controlled buys and describes the five that involved purchases of narcotics from Aviles. These descriptions included, among other things, the dates of the buys and, for four of the five, that RCI-1 exchanged money for narcotics.[1] The affidavit also describes

---

[1] The application is silent on what she exchanged during the fifth buy.

3

the affiants and their experience on the Lebanon County Drug Task Force, and offers a general explanation of the execution of controlled buys, which included a statement that an informant "is provided recorded Drug Task Force currency to make the purchase" during a controlled buy.

A magistrate judge issued a warrant, and, in the resulting searches, law enforcement recovered large quantities of multiple controlled substances, drug paraphernalia, and firearms. Aviles and twelve co-defendants were arrested and charged with various drug trafficking crimes and related offenses. In the twenty-one-count indictment, Aviles was charged with conspiracy to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and (b)(1)(A)(iii) (Count 1); possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) (Count 2); possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 3); possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 4); distribution of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 5); distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 6); distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 11, 14, and 15); possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 19); unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 20); and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a) (Count 21).

After pleading not-guilty, Aviles moved to suppress the evidence discovered through the searches authorized by the warrant because, he claimed, the officers who had submitted the affidavit included false information and omitted other information, each of which may have affected the magistrate judge's decision to issue the warrant. Specifically, he argued that, while the general description of controlled buys represented that currency is exchanged for drugs at *all* controlled buys, some of Aviles's buys may have involved RCI-1's exchanging prescription drugs instead of currency. He also claimed that RCI-1 had conducted additional drug-related transactions with Aviles outside of the controlled buys. In his motion, Aviles argued that he had made "a substantial preliminary showing" that the false information and omissions were made intentionally or recklessly, and the falsity and omissions undermined the probable cause finding, and, therefore, he is entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

Although the District Court determined that Aviles had not made "a substantial preliminary showing" to warrant a *Franks* hearing, the Court conducted an evidentiary hearing to allow him to further develop his claim and make that showing. The Court allowed both parties to question Detective Mong and Sergeant Hopkins regarding their affidavit of probable cause but refused the defense's request to question RCI-1 based on concerns regarding her identity. In supplemental briefing following the hearing, and based on the officers' testimony, Aviles asserted that at least two of the controlled buys involved an exchange of personal property for the drugs,[2]

---

[2] The District Court did not allow the defense to inquire into the exact nature of the personal property exchanged because,

5

that Aviles and RCI-1 had a "relationship" independent of the controlled buys, that RCI-1 was a heroin addict, and that she had failed to abide by some of the officers' instructions during the controlled buys. He asked that the District Court suppress the evidence discovered through the search pursuant to the warrant.

The District Court denied Aviles's motion to suppress, holding that he had failed to make the requisite threshold showing under *Franks* that the inaccuracies and omissions in the affidavit were made deliberately or recklessly. The Court also dismissed Aviles's challenges to RCI-1's credibility, reasoning that the affidavit "contained sufficient information for the judge to evaluate the informant's reliability." A. 166 n.2.

A jury convicted Aviles of all counts. Prior to sentencing, the Government indicated that it would seek mandatory life imprisonment pursuant to the Controlled Substances Act, 21 U.S.C. § 841(b). Under the law at the time, such a sentence could be imposed upon a defendant who had two or more previous convictions for "felony drug offenses." 21 U.S.C. § 841(b)(1)(A). The Government averred that Aviles had three qualifying predicate state convictions: (1) possession of a controlled dangerous substance with intent to distribute near a school zone in violation of N.J. Stat. § 2C:35-7, (2) operation of a controlled substance production facility in violation of N.J. Stat. § 2C:35-4, and (3) possession of a dangerous substance with intent to distribute or manufacture in violation of Md. Crim. Code § 5-602. In support, the

---

as the Government asserted, doing so may reveal RCI-1's identity.

Government submitted charging documents and commitment orders from the New Jersey convictions and a docket report from the Maryland conviction.

Aviles objected to the application of Section 841(b), arguing that none of his prior convictions qualified as felony drug offenses. In order to qualify as a predicate offense, he claimed that the state crime must criminalize the same controlled substances as those named in the Controlled Substances Act, 21 U.S.C. § 802(44), and the state crimes of which he had been convicted each named at least one additional substance not listed in § 802(44). He also argued that the Maryland conviction was not his.

The District Court overruled Aviles's objections. The Court first noted that whether Aviles's prior convictions qualified as felony drug offenses hinged on the approach used to compare them to the federal definition. Under one approach, the categorical approach—described in *Taylor v. United States*—a court may only look to the statutory elements of a defendant's prior offenses and not to the facts underlying those convictions. *See* 495 U.S. 575, 600–01 (1990). Under the other, the modified categorical approach, a court is permitted to look at the statutory elements and record documents from the underlying convictions. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). The former approach applies to indivisible statutes, or statutes that set forth only one crime, while the latter applies to divisible statutes, or statutes that include more than one crime. *See id.* at 2248–49. Citing *Mathis*, the District Court first determined that the New Jersey statutes under which Aviles had been convicted were divisible and, therefore, subject to the modified categorical approach. Because the indictment clearly established that Aviles's conviction had

7

included heroin as an element for each of his New Jersey convictions and because crimes involving heroin are felony drug offenses, the Court held that his convictions qualified as such for purposes of 21 U.S.C. § 841(b)(1).

The District Court also briefly addressed Aviles's Maryland conviction, overruling his objection because "a history report generated by the Defendant's fingerprints is sufficient to prove that the prior conviction is properly attributed to the Defendant." A. 618–19. However, the Court noted that a conclusive ruling on the nature of this conviction was not necessary in order to impose a mandatory life sentence, since it concluded that he had been convicted of the requisite two felony drug offenses. The Court held that its determination that Aviles's New Jersey convictions qualify as such is sufficient and, accordingly, sentenced him to a term of life imprisonment. This appeal followed.

After the District Court entered its sentencing order but while Aviles's appeal was pending, Congress amended the Controlled Substances Act with the First Step Act of 2018, Pub. L. No. 115-391, § 401. The First Step Act replaced the mandatory term of life imprisonment with a mandatory term of 25 years. § 401(a)(2)(A)(ii) (amending 21 U.S.C. § 841(b)). It also replaced the term "felony drug conviction" with "serious drug felony" and limited the offenses that qualified for that mandatory sentence. § 401(a)(1) (amending 21 U.S.C. § 802). The First Step Act provides that the amendments made by it "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 401(c).

8

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. §§ 1291 and 3742(e).

## III.

On appeal, Aviles urges that we should vacate his conviction because the District Court erred by denying his motion to suppress or, alternatively, by denying him a *Franks* hearing. He also seeks resentencing, arguing that a term of life imprisonment should not have been imposed under either the First Step Act or the prior version of the Controlled Substances Act.

## A.

In challenging his conviction, Aviles claims that the affidavit submitted in support of the warrant application contained two factual errors and omitted several important pieces of information. Specifically, he urges that the affidavit incorrectly stated that RCI-1 paid for the drugs with police currency at every buy and that RCI-1 exchanged cash for drugs on April 15. He also argues that the affidavit omitted that personal property was traded for drugs on March 30, that RCI-1 scheduled controlled buys without police instruction, that RCI-1 was a heroin addict, any information with which a judge could assess RCI-1's reliability, that RCI-1 had an "independent relationship" with Aviles, and that the personal property was illicit. Br. for Appellant at 17 (internal quotation marks omitted). Aviles urges that these errors and omissions were, at the very least, made recklessly and affected the

9

magistrate judge's probable cause determination. Thus, he claims that we cannot say with certainty that the warrant would have issued had these errors and omissions been corrected, and the District Court should have granted his motion to suppress, or, alternatively, granted him an opportunity to support his motion in a *Franks* hearing. On this basis, he asks that we vacate his conviction.

The Fourth Amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In *Franks*, the Supreme Court held that a defendant has a right to challenge the veracity of statements made in an affidavit of probable cause that supported the issuance of a warrant. *See Franks*, 438 U.S. at 167–71. In order to obtain a hearing to do so, the defendant must first make "a substantial preliminary showing" that the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of probable cause. *Franks*, 438 U.S. at 155–56; *see also United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). A motion to suppress is granted if, at the hearing, the defendant establishes the same elements by a preponderance of the evidence. *See Franks*, 438 U.S. at 156. Thus, if Aviles cannot show that he is entitled to a *Franks* hearing, he necessarily cannot show that his motion to suppress should have been granted. Accordingly, we will first consider his argument that the District Court erred in denying him a *Franks* hearing.[3]

---

[3] We have not yet determined the standard of review that applies to a district court's denial of a *Franks* hearing, *see United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012), but because our conclusion is the same under any standard,

10

In this case, regardless of whether the alleged omissions and misstatements were made knowingly or recklessly, Aviles has failed to substantially show that probable cause would have been lacking if they had not been made. The following facts, among others, were supported by the affidavit and would have been unaffected by the deletion of the misstatements and the inclusion of the omissions:

- the affiants have extensive experience with the Lebanon County Drug Task Force;

- RCI-1 assisted the affiants in a total of eight police-supervised controlled buys, six of which involved the exchange of cash for drugs and two of which involved personal property;[4]

- the affiants conducted "a complete strip search" of RCI-1 immediately before each buy, A. 60;
- the affiants witnessed RCI-1 enter the locations of the controlled buys without heroin and saw her reappear with it afterwards;

---

including plenary review, this case does not require us to adopt one.

[4] Aviles contends that drugs were exchanged for drugs, but he does not provide sufficient evidence to support his claim. Instead, the record shows that the affiants conducted a thorough search of RCI-1 and her belongings before every controlled buy, and that the personal property exchanged at the controlled buys was legal and photographically documented.

11

- the affiants witnessed one of the deals, which occurred inside Aviles's car;

- the affiants conducted a search of RCI-1's person and belongings after each buy;

- the affiants witnessed "short term vehicle traffic . . . consistent with drug trafficking" coming and going at Aviles's residence, A. 59; and

- the affiants conducted a background check on Aviles, which revealed multiple prior felony drug convictions.

These facts, on their own, provided probable cause to support the issuance of the warrant. Moreover, they are dependent upon police observation and, thus, would not be affected by a judge's questioning of RCI-1's credibility. Because Aviles has not made a substantial showing that the alleged omissions and misstatements would have been material to the magistrate judge's probable cause determination, we conclude that the District Court did not err in denying his request for a *Franks* hearing. Accordingly, because he failed to meet his burden to support a *Franks* hearing, he necessarily cannot show that his motion to suppress should have been granted. We will affirm the District Court's denial of that motion.

B.

Aviles's challenge to the District Court's sentencing order is twofold: First, he urges that the First Step Act, which was enacted while this case was pending on appeal, applies. Because that legislation replaced the mandatory life sentence with a mandatory term of 25 years' imprisonment and limited

12

the predicate offenses that would qualify a defendant for a mandatory sentence, Aviles argues that his life sentence should be vacated.  Even if we determine that the First Step Act does not apply, he argues that his prior state convictions do not qualify as felony drug offenses under the former version of the Controlled Substances Act.

1.

Aviles's first argument, that the First Step Act applies to him, is based on the language provided in Section 401(c) of that Act:  Amendments made by it "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."  Pub. L. No. 115-391, § 401(c).  The crux of Aviles's argument is that a sentence is not "imposed" until entry of final judgment by the highest court authorized to review it.

Although we have not yet had occasion to determine the applicability of the First Step Act to cases pending on appeal at the time of its enactment, the Seventh Circuit recently addressed the issue in *United States v. Pierson* and held that the defendant's "[s]entence was 'imposed' here within the meaning of [the First Step Act] when the district court sentenced the defendant."  925 F.3d 913, 927–28 (7th Cir. 2019).  The court rejected reasoning from *United States v. Clark*, which suggested that "[a] case is not yet final when it is pending on appeal," *id.* at 928 (quoting 110 F.3d 15, 17 (6th Cir. 1997)), because "no other circuits have applied Clark's definition of 'imposed'" and because the word more commonly applies to the activity of district courts.  *Id.*; *see also id.* at 927 (citing federal statutes and rules that indicate that a sentence is imposed by a district court).

13

We agree. "Imposing" sentences is the business of district courts, while courts of appeals are tasked with reviewing them by either affirming or vacating them. *See, e.g.*, *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) ("In other words, if the district court's sentence is procedurally sound, we will *affirm* it unless no reasonable sentencing court would have *imposed* the same sentence on that particular defendant for the reasons the district court provided." (emphasis added)); *Rita v. United States*, 551 U.S. 338, 352 (2007) ("A pro-Guidelines 'presumption of reasonableness' will increase the likelihood that courts of appeals will affirm such sentences, thereby increasing the likelihood that sentencing judges will *impose* such sentences." (emphasis added)). Congress did not refer to "finality," and imposition and finality are two different concepts. Congress's use of the word "imposed" thus clearly excludes cases in which a sentencing order has been entered by a district court from the reach of the amendments made by the First Step Act.[5] Accordingly, we hold that that Act does not apply to Aviles.

---

[5] Many of the cases to which Aviles cites in support of his argument discuss abatement by repeal, a common law rule requiring "abate[ment] of all prosecutions which had not reached a final disposition in the highest court authorized to review them" when a criminal statute is repealed or reenacted with different penalties. *Bradley v. United States*, 410 U.S. 605, 607–08 (1973). But even that rule does not apply where "there is statutory direction or legislative history to the contrary." *United States v. Dixon*, 648 F.3d 195, 199 (3d Cir. 2011) (quoting *United States v. Jacobs*, 919 F.2d 10, 11 (3d Cir. 1990)) (internal quotation marks omitted); *see also Bradley*, 410 U.S. at 608 ("To avoid such results, legislatures frequently indicated an intention not to abate pending

14

2.

We next turn to Aviles's argument that the District Court erred in imposing a life sentence under the prior version of the Controlled Substances Act. Specifically, Aviles urges that his New Jersey and Maryland convictions do not qualify as felony drug offenses under that Act. Because his challenge presents a purely legal question, we exercise plenary review over the District Court's sentencing order. *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016).

Pursuant to 21 U.S.C. § 841(b)(1)(A), convicted defendants were subject to a mandatory term of life imprisonment if they had previously been convicted of two or more "felony drug offenses." "Felony drug offense" is defined as:

> an offense that is punishable by imprisonment for more than one year under any law of the United

---

prosecutions by including in the repealing statute a specific clause stating that prosecutions of offenses under the repealed statute were not to be abated."). Congress provided statutory direction here with its use of the word "imposed."

Aviles also argues that our reading of Section 401(c) should be "precluded by the doctrine of constitutional avoidance." Br. for Appellant at 43. However, similar statutes have been held to not apply retroactively and have not raised constitutional concerns. *See, e.g.*, *Bradley*, 410 U.S. at 609–11 (holding that an amendment to a criminal statute did not apply retroactively to offenses committed prior to the effective date of the amendment, even though the defendants were sentenced after that date).

15

> States or of a State or foreign
> country that prohibits or restricts
> conduct relating to narcotic drugs,
> marihuana, anabolic steroids, or
> depressant or stimulant
> substances.

21 U.S.C. § 802(44). Other subsections provide the controlled dangerous substances that fall under each substance group. *See, e.g.*, § 802(17) (defining "narcotic drug").

To determine whether a conviction qualifies as a felony drug offense, we typically employ the "categorical approach," which requires us to "compar[e] the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime," i.e., the elements of a felony drug offense. *Henderson*, 841 F.3d at 627 (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)) (internal quotation marks omitted). A conviction will qualify as a predicate under this approach "only if the statute's *elements* are the same as, or narrower than, those of the generic offense." *Id.* (quoting *Descamps*, 570 U.S. at 257) (internal quotation marks omitted) (emphasis in original). We do not consider the facts underlying a conviction when applying this approach. *Id.* Here, that would require us to compare the elements of the crimes defined in the New Jersey and Maryland statutes to the definition of "felony drug offense." If one of the state statutes is broader, or covers more conduct than the federal law, then Aviles's conviction under that law cannot qualify as a felony drug offense.

The categorical approach cannot be applied with ease, however, where a statute of conviction is "divisible," or

16

contains alternative elements, thereby making it impossible to determine precisely which crime was committed. *Id.* When presented with such a statute, we employ the "modified categorical approach," which allows courts to "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (citation omitted). In this case, we would then compare the elements of that crime to the definition of "felony drug offense" to determine whether Aviles's state conviction qualifies as such.

Although these two approaches appear straightforward, difficulty ensues when presented with a statute that contains alternatives that may not be elements and, instead, may be "various factual means of committing a single element" that "a jury need not find (or a defendant admit)." *Id.* If the listed alternatives are indeed elements, the modified categorical approach applies. If, on the other hand, the listed alternatives are means of committing the crime, so that we are presented with essentially one crime, the categorical approach applies. Thus, "[t]he first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Id.* at 2256. In *Mathis*, the Supreme Court enumerated a three-step process for doing so: First, a sentencing court should look to see if a state court decision "definitively answers the question." *Id.* Second, the court looks to "the statute on its face." *Id.* "If statutory alternatives carry different punishments, then . . . they must be elements." *Id.* On the other hand, if the list provides only "illustrative examples" of how the same crime might be committed, then they are merely means. *Id.* (citation and

17

internal quotation marks omitted). If these "authoritative sources of state law" "fail[] to provide clear answers," then a sentencing court may look to "the record of prior conviction itself." *Id.* The Court explained that if an indictment and jury instructions reiterated the alternatives laid out in the law or used an umbrella term when charging the defendant, the alternatives are means. *Id.* at 2257. Conversely, reference to one of the alternatives at the exclusion of the others indicates that the listed alternatives are elements. *Id.* The Court warned that:

> such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy "*Taylor*'s demand for certainty" when determining whether a defendant was convicted of a generic offense. But between those documents and state law, that kind of indeterminacy should prove more the exception than the rule.

*Id.* (citation omitted).

The District Court imposed a mandatory life sentence based on Aviles's two prior convictions under New Jersey state law. Because all three state statutes of conviction—both New Jersey statutes and the Maryland statute—explicitly list, or incorporate other provision's lists of, covered controlled substances, and each criminalize conduct involving at least one substance not covered by Section 841's definition of "felony drug offense," we need to delve more deeply under *Mathis* to determine whether the statute is divisible. If it is divisible

18

because the alternative drug types listed or incorporated by the state statutes are elements, such that different crimes are enumerated, we may use the modified categorical approach and look at the relevant criminal records to determine whether those state offenses are predicate offenses. On the other hand, if those substances are merely means, such that there is only one crime with different ways of committing it, then the state statute criminalizes conduct broader than that included in the definition of "felony drug offense," and Aviles's convictions cannot qualify as such. We must consider whether substance type is an element or a means in each statute of conviction individually.

We first address Aviles's conviction under N.J. Stat. Ann § 2C:35-4 for maintaining or operating a controlled dangerous substance production facility. That New Jersey law provides:

> Except as authorized by P.L.1970, c. 226 (C.24:21-1 et seq.), any person who knowingly maintains or operates any premises, place or facility used for the manufacture of *methamphetamine, lysergic acid diethylamide, phencyclidine, gamma hydroxybutyrate, flunitrazepam, marijuana in an amount greater than five pounds or ten plants or any substance listed in Schedule I or II, or the analog of any such substance*, or any person who knowingly aids, promotes, finances or otherwise participates in the maintenance or

operations of such premises, place or facility, *is guilty of a crime of the first degree* and shall, except as provided in N.J.S.2C:35-12, be sentenced to a term of imprisonment which shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, during which the defendant shall be ineligible for parole. Notwithstanding the provisions of subsection a. of N.J.S.2C:43-3, the court may also impose a fine not to exceed $750,000.00 or five times the street value of all controlled dangerous substances, controlled substance analogs, gamma hydroxybutyrate or flunitrazepam at any time manufactured or stored at such premises, place or facility, whichever is greater.

N.J. Stat. Ann. § 2C:35-4 (emphasis added).

First, we look to see if a New Jersey state court decision "definitively answers the question." *Mathis*, 136 S. Ct. at 2256. Aviles asserts that *State v. Kittrell*, 678 A.2d 209, 216 (N.J. 1996), does so by referencing the drugs listed in the statute as "CDS," or controlled dangerous substances. But that case does not address the exact issue before us: whether the substances listed in or referenced by the statute are means or

20

elements.  *See Mathis*, 136 S. Ct. at 2256 (using an Iowa state court decision explicitly holding that the Iowa statute's listed alternatives are means).  We have neither found nor been alerted to any New Jersey state court decision speaking to this discrete issue and, thus, must turn to the other two methods provided by the Supreme Court in *Mathis*.

The next method requires us to consider the language of N.J. Stat. Ann. § 2C:35-4.  As explained above, if different punishments are proscribed, then the alternatives are elements. *Id.*; *see also Henderson*, 841 F.3d at 630 (holding that an alternative list of substances provides separate elements in part because the statute provides different maximum sentences for violators).  We have also recently noted that the inverse is true: The statutory provision of the same punishment, regardless of which alternative was involved in a crime, could indicate that the alternatives are means.  *See Hillocks v. Att'y Gen. United States*, No. 17-2384, 2019 WL 3772101, at *7–8 (3d Cir. 2019); *see also Harbin v. Sessions*, 860 F.3d 58, 65 (2d Cir. 2017) (reasoning that the fact that a statute carries the same punishment regardless of which controlled substance is used shows "that each controlled substance is a mere 'means' of violating the statute, not a separate alternative element").  The New Jersey statute provides that any person found guilty under it "is guilty of a crime of the first degree," regardless of the substance or substances used in the commission of a crime. *See* N.J. Stat. Ann. § 2C:35-4.  And N.J. Stat. Ann. § 2C:43-6(a)(1) provides that any person convicted of a crime in the first degree "may be sentenced to imprisonment . . . for a specific term of years which shall be fixed by the court and shall be between 10 and 20 years . . . ."  Because the punishment does not vary based on substance type, the statute, on its face, could be said

to indicate that its alternative list of substances are merely means. *See Hillocks*, 2019 WL 3772101, at \*8**.**

Additionally, the language of N.J. Stat. Ann. § 2C:35-4 does not indicate that a jury must agree on the particular substance manufactured. Much like the hypothetical statute described in *Mathis*, which allowed jurors to disagree over the exact weapon used as long as all agree that the defendant used a "deadly weapon," 136 S. Ct. at 2249, N.J. Stat. Ann. § 2C:35-4 appears to allow some jurors to conclude that one drug was being manufactured in a particular instance, while others may believe that the drug involved was a different one. As long as they could agree that a defendant maintained or operated a facility for the production of a controlled substance, the jury may determine that the defendant is guilty. *See Harbin*, 860 F.3d at 65 (concluding that a similarly worded New York statute "does not suggest that a jury must agree on the particular substance sold").

The Government supports its argument for the opposite conclusion by citing to the discretionary fine provided by N.J. Stat. Ann. § 2C:35-4, whereby the fine may "not to exceed $750,000.00 or five times the street value of *all* controlled dangerous substances, controlled substance analogs, gamma hydroxybutyrate or flunitrazepam at any time manufactured or stored at such premises, place or facility, whichever is greater." N.J. Stat. Ann. § 2C:35-4 (emphasis added). Because the amount of that fine depends upon the specific drug type involved, the Government urges that the punishment, in fact, varies based on the substance or substances used, and, thus, drug type must be an element. *Id.* We disagree. We first note that the fine is discretionary and may not be imposed in all cases. Even if the fine was mandatory, however, its provision

22

in the statute does not support the Government's argument because, in imposing the fine, the sentencing court must total the value of *all* substances involved in a single conviction. Thus, the statute itself contemplates a single criminal conviction for a violation that could involve more than one substance. If the Government's interpretation were correct and drug type was an element, a defendant would be charged with separate offenses based on each drug, even if they were being manufactured at the same place and at the same time. Because the discretionary fine contemplates the opposite scenario, it supports our conclusion that the substances listed in the statute are merely means by which the crime may be committed.[6]

Having concluded that Aviles's conviction under N.J. Stat. Ann. § 2C:35-4 is not a predicate felony drug offense, both of his two remaining convictions must qualify as such in order for us to affirm the District Court's sentencing order. Thus, we turn to Aviles's conviction under Md. Crim. Code § 5-602.[7] As noted above, the Maryland statute covers a broader

---

[6] The Government argues that the New Jersey Pleading and Practice Form and the New Jersey Model Criminal Jury Charge for N.J. Stat. Ann. § 2C:35-4 may be considered in our analysis. But *Mathis* instructs us only to look at state court decisions and the language of the statute itself as "authoritative sources of state law," 136 S. Ct. at 2256, and this Court has recently "rejected the significance the Government places on the structure of the model jury instructions." *Hillocks*, 2019 WL 3772101, at *8; *see also Harbin*, 860 F.3d at 67–68 (rejecting the Government's reliance on pattern jury instructions).

[7] Aviles's second New Jersey conviction, under N.J. Stat. Ann. § 2C:35-7, presents a thorny issue unaddressed by *Mathis*. The

set of substances than the federal definition of "felony drug offense." Thus, if the list of substances incorporated by Md. Crim. Code § 5-602 are means, the categorical approach would apply, and Aviles's conviction could not qualify as a felony drug offense. On the other hand, if the incorporated substances are elements, the modified categorical approach would apply, and we look to the record documents underlying that conviction to determine of exactly which crime, with which elements, Aviles was convicted. Even if the modified categorical approach applies, however, the record documents from that conviction provide no indication of the substance involved in Aviles's conviction. Instead, those documents merely state that Aviles was charged with and found guilty of "Poss. of CDS W/I to Dist/Manufacture" and "Poss. of CDS." A. 541. Because we would not be able to determine the exact crime of which Aviles was convicted, we could not rule that

---

statute provides for two different punishments, depending on whether "the violation involves less than one ounce of marijuana." N.J. Stat. Ann. § 2C:35-7. Thus, it is divisible, but only into two alternative elements, namely, violations involving less than one ounce of marijuana, and "all other cases," which would include any other "controlled dangerous substance" or "controlled substance analog" (the "other controlled substances"). *Id.* Looking at the definition of the other controlled substances, the drug type appears to be a mere means of committing the latter crime. Thus, while the statute is technically divisible, the drug type, other than the marijuana exception, does not appear to be an element. Because this type of "hybrid" statute is not addressed by *Mathis* and because we conclude that Aviles's Maryland conviction clearly cannot qualify as a federal drug offense, we decline to address whether his second New Jersey conviction does.

that conviction is a predicate felony drug offense using that approach.

We conclude that two of Aviles's three prior state convictions, his convictions under N.J. Stat. Ann. 2C:35-4 and Md. Crim. Code § 5-602, cannot qualify as felony drug offenses. Thus, he could not have been subject to a mandatory term of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (providing for a mandatory life sentence where a defendant has been convicted of *at least two* felony drug offenses). Accordingly, we will vacate the District Court's sentencing order.[8]

## IV.

For the foregoing reasons, we will affirm the District Court's denial of Aviles's motion to suppress, and we will vacate the judgment of sentence and remand for the District Court to determine the appropriate sentence.

---

[8] We do not address the issue, not raised or briefed before us, that could arise on remand, namely, whether the First Step Act will apply on resentencing. *See, e.g.*, *United States v. Jackson*, 2019 WL 2524786, at *1 (N.D. Ohio June 18, 2019) *appeal pending*, No. 19-3711 (6th Cir. July 19, 2019) (holding that the amendments made through the First Step Act applies to a defendant on resentencing, even though he was originally sentenced before the enactment of the Act); *United States v. Uriarte*, 2019 WL 1858516, at *4 (N.D. Ill. April 25, 2019) (holding the same).