NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2715
_____

UNITED STATES OF AMERICA

v.

ALSHAQAH TARIQ POWELL,
Appellant
_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-16-cr-00163-001)
District Judge:  Honorable Yvette Kane
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2019

Before:  RESTREPO, PORTER, and FISHER, *Circuit Judges*.

(Filed: May 22, 2019)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Alshaqah Powell appeals the District Court's order denying his motion to suppress and its imposed sentence of 188 months' imprisonment. We will affirm.

I.

Trooper David Long initiated a traffic stop on Interstate 81 after observing Powell driving while wearing a white headphone over his left ear in violation of Pennsylvania law.[1] He informed Powell that it was against the law to drive with headphones on, but explained that he would not ticket him for the violation.

Trooper Long then asked Powell for his license and registration. Powell admitted that he was not a licensed driver or the owner of the vehicle, which had a temporary registration. Powell appeared nervous, and his hands were trembling as he handed the officer his documentation. Trooper Long asked Powell about his travels and the vehicle's owner, and he noted that Powell's answers to these questions changed during the conversation.

Trooper Long, believing he may have detected a marijuana odor,[2] called for backup and a drug canine, and Trooper Martin arrived about five minutes later. He, too, asked Powell questions but did not smell marijuana.

Approximately twenty-four minutes into the stop, Trooper Long asked Powell for permission to search the vehicle, explained that he must answer with an unequivocal

---

[1] *See* 75 Pa. Const. Stat. Ann. § 3314(a).
[2] Trooper Long had a cold at the time, so he did not feel comfortable acting upon his suspicion without a second opinion about whether there was an odor.

"yes" or "no," and described the purpose of the search. Powell agreed to the search and completed a consent form. The search revealed bricks of heroin in the vehicle's trunk.

Powell was charged with possession with intent to distribute a controlled substance and pled not guilty. He then filed a Motion to Suppress Physical Evidence, which the District Court denied. Powell then entered a guilty plea, preserving his right to appeal the denial of his suppression motion.

At sentencing, the District Court considered the Probation Office's Presentence Investigation Report, which concluded that Powell was a career offender pursuant to the U.S. Sentencing Guidelines and calculated his total offense level as 31, corresponding to a range of 188 to 235 months' imprisonment. Over Powell's objection to this calculation and other arguments, the District Court sentenced Powell to 188 months' imprisonment and imposed a $1600 fine.

## II.

The District Court had jurisdiction to adjudicate and sentence Powell for his offenses against the laws of the United States.[3] We have jurisdiction to review the District Court's denial of Powell's motion to suppress, as it is a final order,[4] and to review Powell's sentence.[5] We review the District Court's findings of facts for clear

---

[3] 18 U.S.C. § 3231.
[4] 28 U.S.C. § 1291.
[5] 18 U.S.C. § 3742.

error and exercise plenary review over issues of law.[6]  Because Powell failed to raise his procedural objections at the time of sentencing, we review those arguments for plain error,[7] and we review his substantive arguments for an abuse of discretion.[8]

## III.

The District Court properly denied Powell's motion to suppress and was both procedurally and substantively sound in imposing its sentence.

## A.

Powell argues that the heroin found in the vehicle should have been suppressed because the traffic stop was not supported by reasonable suspicion and the stop was unnecessarily prolonged, which Powell claims also caused him to involuntarily consent to the search.  We disagree on all counts.

First, a traffic stop is legitimate and justified where the officer has "a particularized and objective basis for suspecting" that a violation has occurred.[9] Pennsylvania law prohibits driving a vehicle with either ear covered by a headphone.[10] Though Trooper Long was unable to see Powell's right ear from his vantage point, he

---

[6] *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008) (citations omitted).
[7] *United States v. Flores-Mejia*, 759 F.3d 253, 259 (3d Cir. 2014) (en banc).
[8] *United States v. Tomko*, 562 F.3d 558, 567-68 (2009) (en banc).
[9] *Heien v. North Carolina¸* 574 U.S. ___, 135 S. Ct. 530, 536 (2014) (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)).
[10] 75 Pa. Const. Stat. Ann. § 3314(a).  The statute includes an exception if the driver is using a headset for hands-free communications, in which case sound from the cellular device must be provided through only one earphone.  *Id.* § 3314(b).

clearly observed a white headphone covering Powell's left ear while driving, providing sufficient justification for Trooper Long to believe that Powell was violating the law and to execute a traffic stop.[11]

Second, a traffic stop may not extend beyond the time necessary "to address the traffic violation that warranted the stop," which includes inquiries such as "checking the driver's license . . . and inspecting the automobile's registration and proof of insurance."[12] If, in the course of tending to the purpose of the stop, the officer acquires reasonable suspicion that another crime has occurred or is about to occur, the stop may be prolonged as necessary.[13] Here, while completing the routine elements of any traffic stop, Trooper Long discovered that Powell was driving without a license—a crime—and came to suspect that there might be contraband in the vehicle.[14] By asking for permission to search the vehicle, Trooper Long promptly investigated his suspicions; he did not unreasonably prolong the stop or detain Powell until he had no choice but to consent.[15]

---

[11] Trooper Long was not required to determine whether Powell's behavior fell into a permitted exception before making the stop. *See Navarette*, 572 U.S. at 403 (reiterating that acting upon reasonable suspicion does not require "rul[ing] out the possibility of innocent conduct" (internal quotation omitted)).

[12] *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-15 (2015).

[13] *See Arizona v. Johnson*, 555 U.S. 323, 332 (2009).

[14] Trooper Long's reasonable suspicions were born of Powell's apparent nervousness, his shaky hands, and his inconsistent and dubious answers to the troopers' questions, as well as the vehicle's registration, which was only four days old.

[15] Powell's argument that he did not voluntarily consent to the search is based solely on his contention that the twenty-five-minute stop was unreasonably prolonged. Because we find that the stop did not exceed a reasonable duration, the argument that his consent was involuntary also fails.

B.

Powell additionally argues that the District Court incorrectly found him to be a career offender and made procedural and substantive errors in failing to consider all relevant sentencing factors and arguments.

1.

Powell was sentenced as a career offender based on two prior convictions in New Jersey for possession with intent to distribute a controlled substance.[16] Powell asserts that these convictions do not qualify as predicate offenses because New Jersey law[17] criminalizes possession of more substances than federal law, and therefore does not match the Sentencing Guidelines' definition of a "controlled substances" violation.[18]

However, this Court has held that where a controlled substances statute can be violated by possession of different types of drugs and the length of the sentence is affected by the specific drug in possession, the court should consider whether the defendant was convicted of possessing a substance that federal law also prohibits to

---

[16] PSR ¶¶ 20, 28, 31, 32.

[17] N.J. Stat. Ann. § 2C:35-7.

[18] Powell also argues that the state convictions do not qualify as predicate offenses because New Jersey's definition of "possession" is broader than the Guidelines' definition by including "constructive possession." However, this argument is entirely without merit, as it is well established that the federal definition of "possession" includes both ownership and constructive possession. *See, e.g.*, *United States v. Garth,* 188 F.3d 99, 112 (3d Cir. 1999); 3d Cir. Model Jury Instruction 6.21.841-1 ("To 'possess' a controlled substance means to have it within a person's control.").

determine whether the prior conviction is a predicate offense.[19] Because both New Jersey and federal law specifically list heroin, the drug possessed by Powell in each offense, as a controlled substance, Powell's prior convictions constitute predicate offenses and the District Court properly sentenced Powell as a career offender.[20]

## 2.

Powell argues that the court erred both procedurally and substantively by failing to consider his arguments that he should not be sentenced within the higher range calculated on the basis of his career offender status[21] and that doing so would create a disparity.[22]

He is incorrect. The court directly addressed the increased sentencing range in light of Powell's repeated drug trafficking offenses, recognizing that "[t]he guideline range is very high. It's high for a reason. The conduct is that serious."[23] In reaching its conclusion, the court acknowledged that Powell is "a good man, a good father, somebody

---

[19] *United States v. Abbott*, 748 F.3d 154, 159 (3d Cir. 2014) (citing *Alleyne v. United States¸* 570 U.S. 99 (2013)).

[20] *See United States v. Henderson¸* 841 F.3d 623, 632 (3d Cir. 2016) (finding Pennsylvania controlled substances statute a match with federal law where the drug possessed in predicate offenses was considered a controlled substance under federal law).

[21] Powell refers to the Sentencing Commission's recommendation that nonviolent, drug-trafficking career offenders "should not categorically be subject to significant increases in penalties required by the Career Offender directive." App. at 234.

[22] In imposing sentences, courts must respond to any meritorious arguments that affect sentencing, *United States v. Ausburn¸* 502 F.3d 313, 328-29 (3d Cir. 2007), and give meaningful consideration to the factors enumerated at 18 U.S.C. § 3553(a), *Rita v. United States*, 551 U.S. 338, 356-58 (2007).

[23] App. at 279.

who is trying to do the right thing by his family,"[24] but determined that, because of Powell's repeated criminal behavior, "[a] sentence at the lower end of the guideline range" is necessary to "satisfy sentencing objectives and promote respect for the law, adequately punish, and hopefully deter [Powell's] behavior in the future."[25] The sentencing court did not plainly err by failing to consider Powell's arguments; to the contrary, it specifically and properly explained the appropriateness of sentencing Powell as a career offender in light of the crimes he committed and the mitigating factors.

Powell also argues that the court failed to consider that his sentence would create a disparity between himself and similarly situated defendants because only fifteen percent of prisoners who fall into the same criminal history category as Powell are sentenced within the steeper range imposed by their career-offender statuses. However, this type of comparison is insufficient to present a meritorious disparity argument.[26] To prove a sentencing disparity, a defendant must show that the allegedly similarly-situated prisoners' specific circumstances parallel his own.[27] Powell's statistical example does not account for the crimes actually committed by the defendants or the details of their

---

[24] App. at 279.
[25] App. at 279.
[26] This evidence also directly contradicts Powell's assertion that the sentencing court abused its discretion, which requires a showing that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. By Powell's own account, fifteen percent of sentencing courts would have imposed the same sentence.
[27] *United States v. Charles*, 467 F.3d 828, 833 & n.7 (3d Cir. 2006).

criminal and personal backgrounds.  As such, Powell failed to present a meritorious

argument that, procedurally, the sentencing court was required to consider or that,

substantively, could "overcome the high level of deference we accord sentencing

judges."[28]

IV.

The District Court properly denied Powell's motion to suppress, and its sentence

was procedurally and substantively reasonable.  We will therefore affirm.

---

[28] *Id.* at 833.